6684

BUSSEY v. CHARLESTON & WESTERN CAROLINA RAILWAY.

1. MASTER AND SERVANT—RULES—ISSUES.—That a rule promulgated by the master to be obeyed by the servant in doing the work of the master has been constantly violated is competent to go to the jury on the issue of the abrogation of the rule. *Held,* that a constant violation by sectionmasters and roadmasters of the rule requiring sectionmasters to send a flagman ahead on rounding a curve is some evidence from which jury may infer acquiescence in, by and notice to, the master.

2. IBID.—IBID.—IBID.—The reasonableness of a rule is for the jury where there is evidence on both sides of the issue of impossibility of performance.

3. IBID.—RAILROADS—FELLOW-SERVANT.—In Georgia a railroad company is liable to a servant for injury caused by the negligence of his fellow-servant.

4. IBID.—PRESUMPTIONS.—In Georgia when a servant is injured while taking part in an act, upon his showing he was free from fault in bringing about the mishap, a presumption of negligence arises against the master.

5. CHARGE.—Where the substance of a request is given in a charge, it is harmless error to refuse to charge it on ground that it would be a charge on facts.

6. RAILROADS—SIGNALS.—Failure of a railroad company in Georgia to give a crossing signal at a place some distance from an accident is not negligence *per se,* but is admissible as an item of evidence on the issue of negligent handling of that train.

7. NEW TRIAL moved on the grounds: First, lack of proof of negligence; second, Judge stated as fact conclusions not sustained by the evidence; third, Judge laid down new rule as regards master and servant; fourth, verdict was contrary to the charge of the Judge; refused.

8. NEGLIGENT KILLING.—In a Georgia cause of action for negligent killing, the jury in estimating the value of a human life are not bound by the mortality and annuity tables of that State. Principles stated by which the jury may arrive at a just conclusion.

Before MEMMINGER, J., Edgefield, December, 1906. Affirmed.

Action by Eliz. J. Bussey, admx. of John C. Bussey, against Charleston and Western Carolina Railway. From judgment for plaintiff, defendant appeals.

*Messrs. W. K. Miller, S. J. Simpson* and *Sheppard Bros.,* for appellant, cite: *Knowledge of a superior officer of the violation of a rule does not effect its abrogation:* 37 S. E. R., 439; 22 S. E. R., 836; 45 S. E. R., 276; 20 Ency., 108; 1 Lab. on M. & S., 516; 12 S. E. R., 179. *Plaintiff must show he was free from fault:* 57 S. C., 298; 58 S. C., 417. *Plaintiff must show negligence in defendant before he can recover:* 2 Lab. on M. & S., 2332; 59 Ga., 436; 11 S. E., 781. *Reasonableness of a rule is a question of law: Broom v. Tel. Co.,* 71 S. C.; 66 S. C., 202; 44 S. C., 442; *R. R. v. Fleming,* 18 Am. & Eng. Ry. Cos.; 37 Id., 105; 15 Id., 187; 12 Id., 257; 18 Id., 6; 6 S. E. R., 41; 43 S. E. R., 990;

23—78

20 S. E. R., 640; 43 Ill., 420; *R. R.* v. *McLaden,* 84 Ill.; *Hoffboner* v. *R. R.,* 52 Ia.; *State* v. *Overton,* 24 N. J. L.; 148 Fed., 345; 20 Ency., 105; 1 Labatt on M. & S., 952, 955, 511; 39 S. E. R., 911; 37 S. E. R., 439; 6 S. E. R., 24; 28 S. E. R., 395; 35 Ga., 105; 9 S. E. R., 530; 70 Ga., 678; 11 S. E. R., 493; 69 Ga., 73; 12 S. E. R., 982; 76 Ga., 527; 9 S. E. R., 827; 12 S. E. R., 179; 18 S. E. R., 18; 52 Ga., 410; 38 S. E. R., 350; 36 S. E. R., 599; 110 Ga., 808; 111 Ga., 713; 106 Ga., 799; 71 Ga., 406; 70 Ga., 674; 80 Ga., 436; 92 Ga., 723; 83 Ga., 539; 47 S. E. R. 953; 15 S. E. R., 781; 9 S. E. R., 827; 36 S. E. R., 218; 70 F. R., 24; 154 U. S., 349; 70 F. R., 27; 1 Labatt M. & S., 229; 15 So., 511; 29 S. W. R., 527; 22 Atl., 927; 18 S. E. R., 645; 9 So. R., 577; 53 N. W., 526; 6 S. E. R., 31; 35 N. W., 866. *What risk a servant assumes is for jury:* 9 S. E. R., 530; 20 S. E. R., 70; 25 S. E. R., 646; 30 S. E. R., 728; 12 S. E. R., 307; 29 S. E. R., 30; 32 S. E. R., 638; 25 S. E., 492; 1 Labatt M. & S., sec. 260; 9 S. E. R., 827. *Rule not obsolete:* 1 Labatt on M. & S., 955, 511; 56 S. E. R., 842. *Rule of damages is value of life:* 3 S. E. R., 307; 45 S. E. R., 452; 36 S. E. R., 881; 38 Ga., 434; 20 S. E. R., 640; 11 S. E. R., 776; 29 So. R., 647; 26 S. E. R., 730; 36 S. E. R., 881; 44 S. E. R., 1. *The law relating to crossing signals:* Code of Ga., secs. 2220, 2222; 53 S. E. R., 508, 244; 77 Ga., 788; 25 S. E. R., 439; 20 S. E. R., 550; 47 S. E. R., 953; 21 S. E. R., 68; 3 Elliott on Ry., sec. 1158; 26 S. E. R., 733; 38 S. E. R., 843; 42 S. E. R., 771; 50 S E. R., 120; 15 S. E. R., 511; 144 Fed. R., 59.

*Messrs. J. Wm. Thurmond, J. H. Tillman* and *W. H. Barrett,* contra, cite: *Testimony showed plaintiff without fault and this carried case to jury:* Ga. Code, sec. 2321; 58 Ga., 489; 31 S. E. R., 421. *Failure to blow singnal may tend to show negligence:* 58 S. C., 74. *Rule was abrogated by non-observance:* 36 S. E. R., 938; 7 L. R. A., 500; 98 Mo., 62; 89 Ia., 420; 2 Am. Neg. R., 654; 1 Id., 742; 27 N. E., 1042; 33 S. W., 1050; 41 Fed. R., 199; 33 S. W. R.,

1052; 1 Labatt on M. & S., 315. *Reasonableness of rule was for jury:* 71 S. C., 308; 73 S. C., 215; 13 L. R. A., 241; 106 Ga., 572; 2 Ency., 759; 87 Tex., 339; 36 Wis., 459; 121 N. Y., 31; 5 Mich., 520; 29 S. E. R., 942; 2 L. R. A., 489; 15 S. W. R., 108; 1 Red. on Bail, 85; Thomp. on Carrier, 335; 4 Fed. R., 37; 24 N. J. L., 435; 7 Ia., 204; 4 N. J. L., 441. *Conflict between rule and other duties:* 12 S. E. R., 923. *If a man is placed in a position so perilous by the act of another as to deprive him of time to think, the other is liable for his injury:* 123 U. S., 376; 34 L. E. (U. S.), 387; 26 Ga., 250. *The value of a life:* Code of Ga., sec. 3829; 71 Ga., 428; 76 Ga., 782; 12 S. E. R., 354; 10 S. E. R., 227.

October 8, 1907. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. This action was brought in July, 1905, by the plaintiff, Elizabeth Bussey, as administratrix of John C. Bussey, deceased, against the defendant railway company to recover damages for the alleged wrongful death of the intestate herein. The deceased was in the employ of the defendant railway as a sectionmaster, having under his control a section of road reaching from the neighborhood of Woodlawn, a station just on the south side of the Savannah River, to Lulaville, a station in Georgia. On the 25th of February, 1905, deceased, together with his men, were on the road working towards Augusta. They stopped at Woodlawn, where, according to the testimony introduced by the plaintiff, they had dinner, and Mr. Bussey having learned from the agent at this place that the track was clear, they continued their work up the road. After leaving Woodlawn some distance they were proceeding around a curve in the road, their hand-car moving up grade at the rate of twenty miles an hour, when they were run into by an extra freight train and Bussey was killed.

The plaintiff alleged negligence on the part of the defendant in not notifying the deceased of the approach of the extra

train; in failing to blow the whistle at Snead's Crossing, a public crossing three-fourths of a mile from the scene of the accident; in coming around the curve at a high rate of speed without having the train under control; failure to blow at the curve as was customary; and, finally, failure of the engineer to apply the brakes and stop the train before striking the car of deceased.

The defendant denies that it was negligent in any of the above particulars and alleges that it was not its duty to give deceased notice of the extra train; and that his injury was caused by his own negligence in not sending a flagman ahead as he, according to the rules under which he was employed, was bound to do.

The case came on for hearing at the October, 1906, term of Court for Edgefield County.   Judge Memminger having refused defendant's motion for a nonsuit, the case went to the jury and resulted in a verdict of fifteen thousand dollars for the plaintiff.   Thereupon defendant made a motion for a new trial, and it also having been refused, it now appeals to this Court alleging error in a number of particulars.

In disposing of the exceptions, the first question naturally arising is whether or not the rule requiring sectionmasters to send ahead flagmen had been abrogated.   The plaintiff introduced evidence in reply tending to show an accustomed disregard of the rule.   Whether this evidence was admissible depends upon the fact whether the disregard was brought home to the defendant company. Certainly, secret and occasional violations of the rule by employees are not admissible to prove its abrogation.   20 Am. & Eng. Ency., 107, and authorities; *Binion* v. *Ry.,* 45 S. E., 276.   It must be shown that the failure to observe such regulation is sufficiently well known to the master to raise the presumption that by acquiescence in its violation the rule had been annulled.   In this, as in all other cases, knowledge of the representative is knowledge of the master, and, therefore, if knowledge is brought home to such representative and such acquiescence on his part is shown, the

rule cannot relieve the master. *Collarn* v. *Ry.*, 38 Am. Rep.,
134; *Baulec* v. *Ry.*, 17 Am. Rep., 325; 20 A. & E. Ency.,
108. The evidence here objected to tended to show an
accustomed disregard of the rule by all sectionmasters and
that even Stillwell himself, who was the roadmaster and
whose duty it was to furnish rules and supervise the work of
his division, regularly traveled without sending flagmen
ahead. We think the only reasonable inference from the
testimony is that Stillwell had notice of the violation of the
rule. His duties, being those of the master, made him the
representative of the master. Therefore, his knowledge was
the master's knowledge. The purpose of the evidence was
to show that the rule was constantly violated by both the
servants and the representative of the master; that it was so
universally disregarded that the only reasonable inference
was that the master had notice of and acquiesced in the viola-
tion. This being so, even granting that the rule was pro-
mulgated by Kenley, the result would not be affected. The
question here is, was the violation of the rule brought to the
knowledge of the master and did he acquiesce in it? Its
determination was for the jury. It is quite true that rules
are necessary for the conduct of the complex business of
railroads and should be given effect. No organization com-
posed of many departments can be successfully managed
where there is an absence of system and regulation. Where
such rules are established and promulgated in some reason-
able way, and employees have knowledge of them, they are
binding and the duty devolves upon employees to obey them.
Many rules are, however, adopted which, when they are
attempted to be put into practice, prove impracticable and
without being expressly revoked they are allowed to be con-
stantly violated. Such abrogated rules cannot in a true
sense be regarded as rules and employees are not guilty of
negligence in violating them. They are not a scale by which
servants' acts are to be measured as to whether or not they
are negligent. Care and diligence are not governed by
them. *Roney* v. *Pa. Co.*, 46 Am. Rep., 173; Labatt on

Master and Servant, vol. I, pages 315 and 511. We are of the opinion, therefore, that the evidence was properly admitted and that the Court was correct in leaving it to the jury to decide whether the rule had been abrogated.

Under this view, if the jury found that the rule was not abrogated, then the question as to the reasonableness of the rule becomes important. Was it proper to submit this question to the jury? There seems to be much conflict of authority on this subject. In volume I, at page 508, of his work on Master and Servant, Labatt says: "Whether reasonableness of a rule is a question for the Court or the jury is one as to which there is much conflict of authority. One theory is that the question is always for the Court, the reason for this view being that it would otherwise be impossible to secure a uniformity of view or to insure the rule pronounced unreasonable by another jury in a subsequent case. Another view is that the question is primarily one for the jury. Some courts have enunciated an intermediate doctrine which seems to be more in harmony with general principles, viz.: that reasonableness of a rule is a mixed question of law and fact, except in plain cases." The rule is thus laid down in 20 A. & E. Ency., 104: "Rules adopted by employers engaged in a complex and dangerous business are presumably selected as the best for avoiding injuries to their employees, and unless clearly shown to be unreasonable and insufficient the master should not be charged with negligence in adopting them. * * * Whether or not a rule adopted by the master for the conduct and government of his employees is reasonable, is a question of law for the court." In Elliott on Railroads, sec. 202, we find: "The reasonableness of such regulations and the manner of their enforcement in a given case has been held by some of the courts to be a question of fact for the jury. But it would seem that this must be a question of law for the courts to decide, if any fixed or permanent regulations are to be established, and the better authority holds it to be such; since one jury in a given case might pronounce the rule reasonable,

while another jury in another case might decide the rule to be unreasonable. * * * There are many cases in which the reasonableness of the rule depends, in the particular instance, upon disputed facts and circumstances, and where this is true, it may perhaps be called a mixed question of law and fact; but when the facts are undisputed, we think it clear, both upon principle and according to the weight of authority, that the question is one of law for the court." Again, Thompson in his work on Trials says, at sec. 1057: "Whether a certain rule of a railway corporation is reasonable, and, therefore, valid, is a question of law for the court; the general rule being that the reasonableness of the by-laws, rules and regulations of corporations, whether private or municipal, is to be decided as a question of law; and it is improper to submit the question of the reasonableness of such a by-law, ordinance or regulation to the jury for decision."

The practice in our State seems to be in accord with these authorities: *Broom* v. *Tel. Co.,* 71 S. C., 506, 51 S. E., 259; *State* v. *Earle,* 66 S. C., 202, 44 S. E., 781; *Gideon* v. *Enoree Mfg. Co.,* 44 S. C., 442, 22 S. E., 598. Therefore, the plaintiff must show that there was an issue of fact raised to entitle the submission of the question to the jury. In her endeavor to do this, she contends that the defendant, after putting the rule in evidence, produced witnesses to prove the necessity, which is practically identical with the reasonableness of the rule; that reply was made by the plaintiff and thus an issue of fact was clearly raised. This point is not well taken. We are unable to see where the disputed fact or facts come in. The evidence introduced by the defendant was merely the expert opinion of the witnesses as to the necessity of the rule. It is true that the facts are stated upon which the rule is based, but nowhere in the plaintiff's reply can we find these facts contradicted. A contradiction of an opinion merely could raise no issue of fact. It would raise simply the original question of necessity or reasonableness that the Court is called upon to decide.

There is the fact, however, that according to rule 1009 of the defendant railway, the deceased was required to go over his section of road at least every other day. There was testimony to the effect that this was impossible if plaintiff's intestate had stopped at curves to send a flagman ahead. This then raises a question of fact and makes the reasonableness of the rule, so far as the deceased was concerned, a question for the jury.

From the consideration of the question above, it is clear that the nonsuit was properly refused, the ground of the motion being that the plaintiff was negligent. The evidence raised issues which had to go to the jury on this point. *Binion* v. *Ry.,* 36 S. E., 938. If, after consideration of the testimony, the jury found that the deceased was justified in violation of the rule in question, then so far as the plaintiff's testimony was concerned, her intestate was free from fault in bringing about the injury. Nor according to the plaintiff's testimony was the defendant so absolutely absolved from negligence as to warrant such a course. It was in evidence that the defendant's agent informed the deceased that the track was clear; that the defendant's agents were rounding the curve with a special train at a rapid rate of speed; that no signal was given, nor was the train under control. These, together with the other alleged acts of negligence, were sufficient to carry the case to the jury.

The Circuit Judge charged the jury that a servant of a railroad company does not assume the risks caused by the negligence of the company or its employees acting in the scope of their duties, and such risks cannot be said, under the law, to be incident to his employment and assumed by him. The appellant endeavors to show that this is an incorrect proposition of law in that it makes the master liable for injuries caused by the negligence of fellow-servants. Sec. 2610 of the Civil Code of Georgia declares that, except in case of railroad companies, the master is not liable to one servant for injuries arising from the negligence or misconduct of other servants about the

same business. *Gunn* v. *Willingham* (Ga.), 36 S. E., 804. The plain implication, and in fact the holding in Georgia, is that where an employee of a railroad company is injured by the negligence of a fellow-servant the master is liable. *Ry.* v. *Worley,* 18 S. E., 361; *Railway* v. *Carbutt,* 37 S. E., 360. Therefore this contention must be overruled.

The fifth exception alleges error on the part of the Circuit Court in charging the jury that, if it was affirmatively shown that the intestate was without fault himself, a presumption of negligence would arise against the defendant and the burden of proof would be upon the defendant to show that it was not negligent. The charge, according to the doctrine prevailing in Georgia, is correct. The cases make a distinction between injuries to employees and those resulting to third persons. In the latter case, immediately upon the happening of the injury the presumption arises that the master was negligent, which presumption it is incumbent upon him to overcome. In the former case, where the plaintiff was taking part in the act during the performance of which he was injured, before the presumption will arise he must show that he was free from fault in bringing about the mishap. When this is done, the presumption is identical with that in cases of injuries to persons not employees. *Ry.* v. *Vandiver,* 11 S. E., 781. The presumption is, of course, by no means conclusive, and even very slight evidence on the part of the defendant may dispel it: This being the law, there was no error in the charge.

Again, error is alleged in refusing to charge the following request and in holding it to be a charge upon the facts: "So, if you find that Bussey neglected to send forward a flagman on the occasion in question, if his duty required him so to do, and that he took the risk of being on the track with his hand-car without a flagman ahead of his car when run into by the train, then I charge you that the plaintiff is not entitled to recover, even if you find that the company was also negligent, and if these

were the facts, you should find for the defendant." This exception cannot be sustained. Throughout his charge the Circuit Judge was apparently anxious to impress upon the jury the fact that if the deceased was in any way to blame for the injury resulting to himself that the plaintiff could not recover. That if he neglected his duty in failing to send forward a flagman he was blamable, is stated in a number of instances. Thus, at folio 590, he uses this language: "To find such sectionmaster free from fault, you should find from the evidence—if there is any such evidence—that at the time of his injury on the railway curve in question—if there was any such curve—that he was doing everything that his employers required him to do for his protection, and had sent out a flagman to flag approaching trains, if his duty required him to send out such flagman. If his duty required him to send out such flagman, and he failed to do so, you will not be authorized to find Mr. Bussey free from fault." Again, at folio 598, he says: "And if you find that such rules notified him that extra trains would run without notice, and that he should not run around curves without a flagman in advance, then I charge you that he was bound to obey such rule, and had no right to substitute any other rule or measure of diligence, but must obey that prescribed by his employer, unless he was authorized in ignoring the rules with the knowledge and acquiescence of the company or those in authority to promulgate and enforce same." And again he charged, at folio 610: "The Court charges you that if you find from the evidence that it was the duty of the employee, Bussey, to send forward flagmen to flag the curve in question, as against the approaching trains, and that such flagging was required to be done by Bussey as an act of precaution under the rules and regulations of the company, if there were such rules, of which he had notice, if he did have notice, and that Bussey failed so to flag on the occasion in question, and as a result thereof was killed by an approaching train, then I charge you that such failure to obey the rules would be such an act on his part as would prevent any

recovery in this case." Clearly from these quotations the substance of the rejected charge was given to the jury, and even were the Circuit Judge in error in holding it a charge upon the facts, it was immaterial and harmless.

The Judge instructed the jury that the failure of the defendant to give the signal at Snead's Crossing could not be considered as negligence *per se* with respect to the deceased, but that it might be considered only as an item of evidence tending to establish negligence. The defendant alleges that this was error. An examination of the Georgia cases will show that they sustain the Circuit Judge. In the case of *Railway* v. *Golden,* 21 S. E., 68, we find this language: "But this Court, so far as I know, has never held, relatively to a person that distance from a crossing, that the omission to give the signal required by law is negligence *per se,* as was charged in this case by the trial Judge. It has been held that the evidence of non-compliance with the statute by the servants of the railroad company is admissible, and the jury may be instructed by the Judge that they may consider it. This, I think, is as far as the Court has gone on the subject." In the very strong opinion in the case of *Railway* v. *Gravitt,* 20 S. E., 550, the Court lays down the same rule. The purpose of such a holding is clear. The neglect to blow the whistle at the crossing as defendant's duty required has a tendency to show a negligent or reckless disregard of duty. This fact, together with other facts, may form a chain bringing home to the defendant the negligent act complained of and for which it is sought to be held responsible. It may be very important or it may be of no value at all. It is just so much evidence which the jury may take into consideration and give such weight as to them seems proper.

Finally we consider the question whether it was error on the part of the trial Judge to refuse a new trial. It is well settled that for error of fact this Court is without power to review the Circuit Court's action. Therefore, to entitle the defendant to a new trial error of

law must be shown. The first alleged error, based upon a number of subdivisions alleging error, is that the verdict should have been set aside because it was contrary to the overwhelming weight of the testimony. Without taking up the subdivisions separately, we hold that the grounds alleging error because of a lack of proof of negligence cannot be sustained. These questions were properly submitted to the jury, and they having reached a verdict this Court will not interfere upon the ground that the finding is against the weight of the testimony. *Ruddell* v. *Ry.,* 75 S. C., 291; *Cain* v. *Ry.,* 74 S. C., 89.

Likewise it has been held that it is not error of law for a Judge in overruling a motion for a new trial to state as conclusions facts not sustained by the testimony. *Caldwell* v. *Ry.,* 73 S. C., 443, 53 S. E., 746. Therefore, these grounds must be overruled.

Nor can we see that the Circuit Judge attempted to lay down any new rule as regards master and servant in his order. His intention was to say that a railroad company could not lay down a rule, and in contemplation of such rule, act in entire disregard of the rights of the employee.

The eleventh exception raises the point that under the Georgia statute and the decisions of that State a verdict of fifteen thousand dollars was illegal and excessive, in that it was more than the amount that could, by the rules established by the courts of Georgia, have been fixed by the jury as the value of the life of the deceased. According to these rules the plaintiff is allowed to recover for the full value of the life of his or her intestate. The difficulty is in arriving at the value of the life. The defendant contends that the proper and only method is to use the mortality and annuity tables, find from the former the number of years the deceased probably would have lived, find from the latter the amount of one dollar for that time, and multiply that amount by the yearly earnings of the deceased. This is a correct statement of the general rule when the tables are used, but the jury are not bound to use the tables

in establishing the value of a life. *Ry.* v. *Clark,* 44 S. E., 1; *Ry.* v. *Burney,* 26 S. E., 732.

And even when the tables are used there is no iron-clad law holding the jury down to them. As was said by Justice Lumpkin in what he though would be a proper charge for the trial Judge as set out in the case of *Ry. v. Burney, supra,* 733 : "In estimating the probable length of a given man's life, as compared with the average duration of life of one of the same age, his health, occupation, habits, and surroundings just as they are disclosed by the evidence, ought to be considered; and proper weight be given to all these things fixing the expectancy of the life, diminishing or increasing the figures laid down in the tables according to the facts in the particular case under investigation. * * * If in any case the expectancy of the person under consideration would, under the evidence, have been probably greater or less than that of the average man, the amount of damages to be allowed should be increased or diminished accordingly. * * * Feebleness of health, actual sickness, the loss of employment, voluntarily abstaining from work, dullness in business, reduction in wages, the increasing infirmities of age, the corresponding diminution of earning capacity, and other causes may contribute to a greater or less degree to decreasing the gross earnings of a lifetime. All should be taken into consideration." We take it for granted that the jury properly considered all of these matters and reached their verdict only after careful deliberation. The Circuit Judge, who was present and heard the testimony, by his refusal to grant a new trial expressed his approval of the verdict. This Court, therefore, holds that it is correct.

Nor can we sustain the exception that the new trial should have been granted because the verdict was contrary to the charge of the Court. The jury were instructed that in order for the plaintiff to recover she must show that her intestate was free from fault, and that if both he and the defendant were free from fault, there could be no recovery. As was said above, the whole ques-

tion of negligence was submitted to the jury, and they having found a verdict for the plaintiff, thereby made it known that they found the facts such as would sustain a verdict. Therefore, this Court cannot set it aside.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE GARY *concurs in the result.*