### 8867

### STURDYVIN v. ATLANTA & C. A. L. RY. CO.

#### (82 S. E. 275.)

MASTER AND SERVANT.  INJURY TO SERVANT.  NEGLIGENCE.  CONTRIBUTORY NEGLIGENCE.  EVIDENCE.  ASSUMPTION OF RISK.  NONSUIT.  ISSUE FOR JURY.

1. On motion for nonsuit, the evidence and all inferences from it must be taken most strongly against defendant, and where there is some evidence of every fact essential to a recovery, the motion must be denied.

2. The negligence of a railroad company in failing to provide handrails and running boards at the sides of the tender of switch engines cannot be determined conclusively by what other railroad companies did or failed to do, but the fact that two railroad systems had so placed handrails and running boards has some bearing on the issue.

3. Whether a railroad company was negligent in failing to provide handrails and running boards at the sides of the tender of switch engines *held,* under the evidence, for the jury.

4. The duty of an employer to furnish appliances reasonably safe should not be determined solely with reference to the service required, but the measure of the duty depends also on how the service is customarily performed with the knowledge and acquiescence of the employer, and his duty does not end with the adoption of a proper system and promulgation of suitable rules, but he must exercise reasonable care to see that the rules are enforced, and that the instrumentalities furnished are properly used.

5. In an action against a railroad company for injuries to a brakeman while assisting in operating a switch engine, evidence *held* to support a finding of negligent failure to provide a safe place to work, in that the rails were about 18 inches above the roadbed when they should not have been more than 6 inches, and that such negligence was the proximate cause of the accident.

6. It is not contributory negligence as a matter of law for a brakeman, assisting in operating a switch engine, to get on or off a moving

engine, unless the situation is such as to make the danger of doing it apparent to a man of ordinary prudence.

7. Whether a brakeman, injured while assisting in operating a switch engine, was guilty of contributory negligence in attempting to mount the engine while in motion, *held,* under the evidence, for the jury.

8. Under the Constitution, the defense of assumption of risk is not available to a railroad company when sued by a brakeman in its employ for a personal injury.

Before SHIPP, J., Greenville, March, 1913.    Affirmed.

Action by John M. Sturdyvin against the Atlanta & Charlotte Air Line Railway Company.    From a judgment for complainant, defendant appeals.

*Messrs. Cothran, Dean & Cothran,* for appellant, cite: *As to alleged negligence in not providing a handrail and running board on the side of tender:* 1 Labatt, M. & S., secs. 35, 13; 78 S. C. 481; 30 Am. Rep. 661; 126 Mass. 84; 86 S. C. 271; 82 S. C. 224; 71 S. C. 58; 65 S. C. 194; 67 S. C. 136; 38 S. C. 199; 66 S. C. 302; 138 Fed. 6; 140 Fed. 568; 60 S. C. 153; 61 S. C. 488; 72 S. C. 421; 74 S. C. 143, 234; 76 S. C. 286. *As to alleged negligence in not warning plaintiff of the dangerous condition that existed in the track at the point where he attempted to mount the footboard:* 55 S. C. 488. *As to alleged negligence of engineer in starting the engine back before the plaintiff could give the signal to come back:* 78 S. C. 413; 34 S. C. 451. *Plaintiff's contributory negligence:* 90 S. C. 48; 86 S. C. 69; 84 S. C. 364; 82 S. C. 582; 85 S. C. 363; 89 S. C. 502. *Action at common law and not under Federal Employers' Liability Act:* 158 U. S. 285; 105 U. S. 221; 78 Atl. 34; Doherty, Liability to Interstate Employees, p. 67. *Respondent cannot sustain judgment upon ground of erroneous rulings by trial Judge:* 23 S. C. 105; 65 S. C. 207; 64 S. C. 571; 59 S. C. 498. *Assumption of risks:* 223 U. S. 50; 229 U. S. 119; 224 U. S. 611; 206 Fed. 868; 73 S. E. 679; 125 Pac. 336; 59 So. 264.

*Messrs. Ansel & Harris,* for respondent, cite: Safety
Appliance Act of Congress, sec. 4; 222 U. S. 20; 226
U. S. 575; Judson Interstate Com. 588, 589; 80 S. E. 220;
112 N. C. 902; 210 U. S. 281, 294; 220 U. S. 559. *Con-
tributory negligence:* 78 S. C. 356; 68 S. C. 84; Am. Ann.
Cases A. 89; 94 S. C. 89; 66 S. C. 528; 79 S. C. 176; 90
S. C. 42; 82 S. C. 542; 94 S. C. 410; 66 S. C. 534; 93 S. C.
263; 40 S. E. 197; 75 S. C. 68; 196 U. S. 589; 229 U. S.
317-321. *Duty of master as to roadbed:* 69 S. C. 387;
74 S. C. 321. *Proximate cause question for jury:* 94 S. C.
324-335; 76 S. E. 553; 94 S. C. 410.


July 4, 1914.

The opinion of the Court was delivered by MR. JUSTICE
HYDRICK.

Plaintiff recovered judgment against defendant for
$5,000 damages for personal injuries sustained while assist-
ing, as a brakeman, in operating a switch engine in defend-
ant's yard at Greenville, S. C., by attempting to mount said
engine when it was in motion. The engine was provided
with two steps, sometimes called running boards, at the
front, on each side of the drawhead, and two on the rear
of the tender, similarly placed. The steps were about 12
inches wide and three feet long, with backstops about six
inches high. They extended over the rails and hung about
12 inches above them. They were so placed for the
employees to stand upon, as the engine went about its busi-
ness over the yard, and so that they could conveniently get
on and off to throw switches and attend to their other
duties. To enable him to better perform his duties, and
especially that of giving signals to the engineer, the brake-
man was expected to ride on one of the steps at the forward
end, that is, the end in the direction in which the engine was
moving.

One of defendant's yard conductors, who had been for
seven years, and was still at the time of the trial, in defend-

ant's service, testified that he had instructions from the
superintendent not to allow any of the employees to attempt
to get upon the steps of an approaching engine from the
track, presumably because, in such an attempt, to fall or a
misstep would throw them directly in front of the approach-
ing engine, and that they were permitted to mount an
approaching engine only from the side of the track.   This
instruction or rule was generally obeyed and enforced.
Rule 11 of the company was as follows :

"Every employee must exercise the utmost caution to
avoid injury to himself or to his fellows, especially in the
switching of cars, and in all movements of trains, in which
work each employee must look after and be responsible for
his own safety.   Jumping on or off trains or engines in
motion, getting between cars in motion to couple or uncouple
them, and all similar imprudences are dangerous and in
violation of duty.   All employees are warned that if they
commit these imprudences it will be at their own peril and
risk."

It will be seen that the rule does not, in so many words,
prohibit the practice of jumping on or off moving engines
or trains; and, though a prohibition of it may be implied
from the warning therein given, the evidence is that, in that
respect, the rule has never been observed or enforced.   On
the contrary, the custom of defendant's servants has been
to get on and off moving engines and trains, and this cus-
tom has been so general and long continued as to warrant
the inference that it obtained with the knowledge and
acquiescence of defendant, notwithstanding the rule.   The
same conductor testified that, during seven years that he
had been in the service, the custom had prevailed, and still
prevails, and that it was known to and even practiced by
the superior officers and agents of defendant.   In fact, he
said that he did not think it was a violation of the rules.

The night of the accident was dark and rainy.   At the
place where it occurred there was no light, except that

afforded by the switch light and the lantern which plaintiff carried, and the tracks were on an embankment, which began to slope very close to the end of the crossties, there being just enough room for a person to walk along the roadbed at the ends of the crossties, which were from 8 to 12 inches thick, and extended about that distance outside the rails.    The roadbed was not surfaced, nor was there any ballast between the crossties outside the rails.

Plaintiff threw the switch to the track into which he had been ordered to take the engine.    As he did so, the engineer, seeing that the switch had been properly set, did not wait for a signal, but immediately reversed his engine and started backwards into that track..    Plaintiff was standing by the side of the track, and, as the engine approached him, at a speed from six to eight miles an hour, he attempted to jump upon the step at the end of the tender.    His right foot struck the edge of the backstop an inch or two above the step, glanced off, and passed between the back of the step and the wheel.    Before he could recover his balance his leg was caught by the wheel and crushed, so that it had to be amputated a few inches below the thigh.

The sole question presented by the appeal is whether the trial Judge erred in refusing defendant's motion for a nonsuit.    It is unnecessary to cite authority for the proposition that, on a motion for nonsuit, the testimony and all inferences from it must be taken most strongly against the defendant.    It is also well settled that, if there was any testimony tending to prove any one or more of the specifications of negligence, the motion was properly refused.    It follows that it is necessary to consider only those allegations of negligence which are found to be supported by the evidence.

Negligence is charged in the failure of defendant to provide handrails or grab irons and steps, or running boards, at the sides of the tender.    Plaintiff testified that it would be easier and safer to get on and off a moving engine if the

9—98.

steps were on the sides, and he mentioned two railroad systems which had them so placed.    While it is true that the allegation of defendant's negligence is not to be tested conclusively or exclusively by what other well regulated companies did or failed to do, still the testimony had some bearing upon the issue.   *Lowrimore v. Mfg. Co.,* 60 S. C. 153, 38 S. E. 430; *Bodie* v. *R. Co.,* 61 S. C. 488, 39 S. E. 715; *Jennings* v. *Mfg. Co.,* 72 S. C. 421, 52 S. E. 113; *Fitzgerald* v. *Mfg. Co.,* 74 S. C. 234, 54 S. E. 373; *Keys* v. *Granite Co.,* 76 S. C. 286, 56 S. E. 949.   This testimony considered in connection with and in the light of the other testimony in the case, and especially the fact that the employees were permitted to mount moving engines and cars, and were required, when they did so, to mount them from the side of the track, was sufficient to carry the issue to the jury.

The learned counsel for appellant admit that, if the testimony warranted the inference that defendant's employees were required to get on and off moving engines and cars, it was the duty of defendant to furnish appliances reasonably safe and suitable for such service.   But the duty of the master should not be determined solely with reference to the service required.   The measure of the duty also depends somewhat upon the manner in which the service is customarily performed, with the knowledge and acquiescence of the master.   The master's duty does not end with the adoption of a proper system and the making and promulgation of suitable rules for the safety of his servants.   He is bound also to exercise reasonable care and diligence to see that the rules are enforced, and that the instrumentalities furnished are properly used.   3 Labatt, M. & S. (2d ed.) secs. 1110, 1120.

While the testimony may not warrant the inference that the employees were actually required to get upon moving engines and cars, it does warrant an inference of an invitation to do so, implied from the custom, and, perhaps, also,

that doing the work in the customary way was a condition of remaining in the service. Under such circumstances, the existence of the rule suggests the possibility of its having been made and promulgated for purposes other than the real desire to safeguard the defendant's employees. Under such circumstances, a rule should not be an effective shield from liability. *Bussey* v. *Ry.,* 78 S. C. 356, 58 S. E. 1015, Ann. Cas. 1912A, 89.

The next specification of negligence which finds support in the evidence is in not providing a safe place to work, in that the rails at the switch were about 18 inches above the roadbed, when they should not have been more than 6 inches, the height of the rails above it. This necessarily involves the allegation that the roadbed at that place should have been surfaced to the level of the top of the crossties. Appellant contends that the only inference from the facts and circumstances is that this defect was not the cause of the accident, because it indisputably appears that the sole cause of the accident was, not that the plaintiff did not jump high enough to catch the footboard, but because his foot struck the backstop instead of the step. This argument is plausible, but it leaves out of view the fact that the necessity of having to make such a high step from the edge of the embankment may have been the cause of plaintiff's miscalculation, not only of the height of the step, but also of its position and of his ability to safely catch it. It is matter of common knowledge and experience that such a feat is more easily and safely accomplished from a level surface. Such an equation is composed of numerous factors of more or less importance; and it may be that one of the most important here involved was the failure of plaintiff's mind to properly and accurately direct his physical energies in the attempt, on account of the situation and circumstances mentioned. In *Strauss* v. *R. Co.,* 94 S. C. 324, 77 S. E. 1117, an iron bolt was allowed to remain on the ground in the defendant's yard, where

employees were constantly getting on and off moving engines and cars. The plaintiff stepped from a moving engine upon it, and it either rolled, or his foot slipped from it, and he was thrown under the engine and injured. It was held that, allowing this bolt to remain upon the yard, in connection with the unevenness or irregularities in the surface of the ground, was sufficient evidence of negligence to carry the case to the jury. This is a much stronger case than that. In view of the known and permitted custom of employees jumping on and off moving engines and cars, and the fact that it was frequently done in the night, and of the absence of light, except that afforded by the switch light and the plaintiff's lantern, it was properly left to the jury to say whether the place was reasonably safe or not.

The next question to be considered is whether the motion should have been granted, because the testimony is susceptible of no other inference than that plaintiff was guilty of contributory negligence. That contention is stated by appellant as follows:

"As the switch engine was backing past the spot where the plaintiff had thrown the switch and where he was standing in a place of perfect safety, the plaintiff attempted to board the switch engine upon the rear footboard of the tender, which was then in front, as the engine was running backwards, in direct violation of the rules of the company, which forbids employees from jumping on engines in motion in the nighttime, incumbered with a lantern in one hand, at a point inadequately lighted for such an attempt, where the distance from the ground to the step was greater than at other points of the yard, and when he knew that a false step or other miscalculation would inevitably throw him directly in the path of the approaching engine, when there were other safe places accessible to him for boarding the same, and when care for his own protection required that he should wait until the engine stopped."

The effect of the alleged violation of the rule has already been discussed. It is not contributory negligence to get on or off a moving train unless the situation and circumstances are such as to make the danger of doing so apparent to a man of ordinary prudence, and ordinarily it is a question of fact for the jury. *Strauss* v. *R. Co., supra,* and cases cited. The facts and circumstances of this case were susceptible of more than one inference, and that question was properly sent to the jury.

Under the Constitution of this State, the defense of assumption of risk was not available to defendant. *Youngblood* v. *R. Co.,* 60 S. C. 9, 38 S. E. 232, 85 Am. St. Rep. 824; *Bodie* v. *Ry.,* 61 S. C. 468, 39 S. E. 715.

These views make it unnecessary to consider the other grounds of nonsuit, or the ground upon which plaintiff asked that the judgment below be sustained, to wit, that the action was under the Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), and the alleged failure of defendant to comply with the Safety Appliance Act of Congress (Act March 2, 1895, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]).

Affirmed.