## BALLARD v. ATCHISON, T. & S. F. RY. CO.

### No. 8756.

Circuit Court of Appeals, Fifth Circuit.

Nov. 29, 1938.

Walker Saulsbury and Byron Skelton, both of Temple, Tex., for appellant.

Thornton Hardie, of El Paso, Tex., for appellee.

Before FOSTER, HOLMES, and Mc-CORD, Circuit Judges.

FOSTER, Circuit Judge.

This is a suit arising under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. Jurisdiction is unquestioned. Appellant, W. Ballard, hereafter called plaintiff, was the engineer of one of defendant's trains, No. 46-S, on a trip from Pecos, Texas, to Roswell, New Mexico, designated in train orders as train Extra 1023 East, according to the number of the engine. At about 10:52 P. M. it collided with the caboose of another one of defendant's trains, Extra 1146 East, which was standing, with a cut of about 10 or 12 cars, on the main track in front of the station at Hagerman, N. M. Plaintiff was severely injured. He alleged acts of negligence of the crew of both trains and of his own fireman as the proximate cause of the collision. At the close of the evidence a verdict was directed for defendant, apparently on the theory that the primary cause of the collision was the negligence of plaintiff in not operating his

train at restricted speed within the yard limits of the station at Hagerman. Error is assigned to that action of the court.

Evidence in the record tends to show the following facts: No. 46-S started from Pecos with the engine and two or three cars. It had to do switching at various stations on the road, setting out and picking up cars, but, so far as the record discloses, it had no switching to do at Hagerman and was not required to stop there. At the time of the collision it consisted of about 30 cars. Train 46-S was on the time table but did not have time table rights. Train Extra 1146 East was not on the time table and neither of the colliding trains was a first class train. Various rules of the defendant railroad company were introduced in evidence. Rule 93 provides that: "Within yard limits all trains and engines may use main track, not protecting against second or third class trains or extra trains, but will give way as soon as possible upon their approach."

Rule 99 provides: "When a train stops under circumstances in which it may be overtaken by another train, the flagman must go back immediately with flagman's signals a sufficient distance to insure full protection, placing two torpedoes and, when necessary, in addition, displaying lighted fusees. When the conditions require, he will leave the torpedoes and a lighted fusee. When a train is moving under circumstances in which it may be overtaken by another train, the flagman must take such action as may be necessary to insure full protection. By night, or by day when the view is obscured, lighted fusees must be thrown off at proper intervals."

Rule 494 provides as to firemen: "They must assist in keeping a constant lookout upon the track, and must instantly give the engineman notice of any obstruction or signal they may perceive."

Train No. 46-S left Artesia, about 20 miles from Hagerman, 55 minutes after train Extra 1146 East, both proceeding in the same direction on the same track. Train orders were introduced in evidence showing that train No. 46-S had the right of way over train Extra 1146 East, although neither was a first class train. About a mile from the station at Hagerman there is a double crossing of public roads. Something over 2,000 feet from the station the main track curves to the left so that the engineer seated on the right side of the cab can not see the track ahead

of him until his engine reaches a point about 1,050 feet from the station. The fireman seated on the left side of the cab has an unobstructed view of the track when going over the curve and, of course, on the straightaway. The signal lights were burning brightly on the back of the caboose standing in the station at Hagerman but nothing else was done by the crew of that train to protect it from collision.

This cut of cars had been standing on the main track at Hagerman for about 20 or 25 minutes with the airbrakes set, making it a solid obstruction. Plaintiff testified that he expected to meet Extra 1146 East somewhere between Artesia and Roswell but it could have been on the main line or a siding. We find nothing in the record tending to show that he should have expected to meet that train at Hagerman. Plaintiff further testified that as he reached the double road crossing about a mile from Hagerman he applied air to his brakes and slowed the train down to about 15 miles an hour. Prior thereto he was running at the rate of about 25 miles an hour. He asked the fireman to look out and see if all was clear. The fireman opened his window, looked out and told him that all was clear; that he then took off the air but shut the steam down to a drifting rate; that he relied on the fireman and did not see the lights of the caboose until he got to the straight track. He then applied the emergency brakes but it was too late to stop to avoid the collision, although the speed was reduced to four or five miles an hour; that he shut off the fire and the oil to prevent an explosion or fire and rode his engine into the collision; that if he had had four hundred or five hundred feet more to go the accident would not have happened.

The fireman corroborated plaintiff as to the application of the air brakes at about the point of the double road crossing and the fact that the engineer could not see the track ahead while the train was on the curve. He denied that the engineer asked him about their location or anything else. He testified that his window was open and he looked out and saw some lights but thought they were all far off to the left. He said there were quite a few lights down that way, lights in town and on big trucks on the highway, which parallels the railroad; that the trucks have two lights on the rear end, which look almost like the lights on the rear end of a train; that he

was confused by these lights but he gave no information to the engineer at all; that just as they went around the curve he realized for the first time that there was something ahead of them; that they were then going about 30 miles an hour and he shouted to the engineer to "big hole" his train, meaning to apply the brakes in an emergency; that when they were 3 or 4 car lengths from the other train he jumped and was not injured. He did not shut off the fire in the engine and did not shut off the oil. He admitted he was familiar with Rule No. 494. The conductor of train 46-S testified that prior to the collision the speed of the train was 7 or 8 miles an hour.

Under the provisions of the Federal Employers' Act, 45 U.S.C.A. § 53, contributory negligence on the part of an employee does not bar recovery but simply requires that the damages shall be diminished by the jury in proportionate amount to negligence attributable to such employee. Seaboard Air Line Ry. v. Tilghman, 237 U.S. 499, 35 S.Ct. 653, 59 L.Ed. 1069. It is the general rule that negligence is a question for the jury to be determined under all the facts and circumstances of the particular case. And it is well settled that where material evidence is in conflict or reasonable men may draw different conclusions from undisputed evidence the case should go to the jury. Richmond & Danville Railroad Co. v. Powers, 149 U.S. 43, 13 S.Ct. 748, 37 L.Ed. 642.

It can not be said in this case that the Judge could decide the question of negligence as one of law. Defendant's rules 93 and 99 are in conflict as applied to this case. While under Rule 93 a train crew was not obliged to protect it against an extra train, under rule 99, if they had reason to believe that a following train might overtake them, they were bound to take the precautions prescribed by that rule. The crew of Extra 1146 East knew that train 46-S was following it. The jury might have found that had they followed rule 99 the collision would not have occurred. So, too, the fireman of train 46-S might have been considered negligent by the jury in not instantly notifying plaintiff that the lights he perceived might indicate a train was standing on the track at Hagerman. Plaintiff had the right to presume the fireman would do his duty. If the jury believed his statement that the fireman told him all was clear that would tend to show the fireman was guilty of negligence, contributing to the accident. Further, the rule requiring an engineer to operate his train at restricted speed within yard limits is very indefinite. If the jury believed the testimony of the engineer they might have considered that he was not negligent in this respect. On all the evidence in the record the case was clearly one for the jury. It was error to direct a verdict for defendant.

Reversed and remanded.