## WIGGINS v. POWELL et al.
### No. 9757.

Circuit Court of Appeals, Fifth Circuit.
May 23, 1941.

John S. Lavin, of Orlando, Fla., and J. W. Hunter of Tavares, Fla., for appellant.

C. P. Dickinson, of Orlando, Fla., for appellees.

Before FOSTER, SIBLEY, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

J. H. Wiggins, a section foreman for Receivers of the Seaboard Air Line Railway, was injured while engaged in the performance of his duties on the railroad. He brought suit against the Receivers under the provisions of the Federal Employers' Liability Act, § 1 et seq., 45 U.S.C.A. § 51 et seq. The case was tried to a jury and at the conclusion of the evidence the court, on motion, directed a verdict for the defendants on the theory that Wiggins was guilty of negligence which "was the proximate cause of the accident". From the judgment entered on the directed verdict Wiggins has appealed.

The record reveals that on the night of February 14, 1938, defendants' Train No. 680 used a packing house siding at Lake Charm, Florida. This siding led from the main line of the Oviedo Branch of the railroad. In order for Train No. 680 to use the siding it was necessary to open the switch against the main line of the Oviedo Branch. After using the siding, the train by use of a "run-around" track returned to Orlando, and the Lake Charm switch was left open against the main line.

On the following morning Wiggins and four members of his section crew were riding on a motor car along the main line of the Oviedo Branch. The car was being operated by Earl Moore, a member of the section crew. The car was drawing a brakeless trailer loaded with crossties, and was traveling from Orlando toward a point beyond Lake Charm where the crew had track repair work to do. The car was being operated at a speed of from eight to ten miles per hour when it ran into the open switch and was derailed, causing permanent injury to Wiggins.

At a point approximately eighty feet beyond the switch a road running from behind a warehouse crossed the tracks. The packing house was in operation and this

road was used by vehicles moving to and from it, and both Wiggins and Moore testified that their attention was focused on the road and crossing for, "We had rigid instructions about doing any personal injuries on the road crossing, and we were to give all preference to them."

The motor car was so constructed that an iron rod down the center of the car formed a back rest with seating arrangements on each side facing out from the track. Wiggins was sitting on the right side of the car toward the front and was facing out and ahead. Moore, the operator, was sitting behind Wiggins, and the other crew members were sitting on the left side of the rail.

The switch target was a metal standard located eight feet and eight inches from the nearest rail. The target presented a circular red face to indicate an open switch, and a white parallelogram pointing upward to indicate a closed switch. As the motor car approached the switch the target presented a circular red face indicating that the switch was open, and Wiggins concedes that had he been anticipating danger from an open switch he could have seen the switch target in more than ample time to have directed Moore to stop the car, and that in all probability it would have been possible to observe the target three or four hundred feet before reaching the point where the car was derailed. Moore testified that had he been looking he could have seen the switch target easily, probably for a distance of three or four hundred feet, but that he failed to see that the switch was open until he was within four or five feet of the point of derailment.

There was no movement of trains anywhere about the switch at the time of the accident, and Wiggins testified that he was merely scanning the track for obstructions and concentrating on the blind road crossing ahead. "I wasn't expecting to find an open switch, and I never have found one open." He had been section foreman for the railroad for thirty-one years and had been foreman on that particular section for twelve years. He did not see that the rail was out of position until "ten or twelve feet" before the motor car was derailed. When he saw that the switch was open he called a warning to Moore, who, having apparently perceived the danger about the same time, applied the brakes before Wiggins could get the words out of his mouth.

The defendants introduced in evidence many rules of the railroad. It is only necessary to notice the two following rules which apply to section foremen:

"1169. They will not permit any person to run any motor car, lever car, or velocipede over their section unless such person holds written permit from the General or Division Superintendent, Division Engineer or Railroad Master."

"XII–3. The foreman or other employee to whom the car is assigned is responsible for the inspection, use, operation and care of the car. The foreman will personally operate the car, unless he has on the force a man better fitted to do so, but in no case is the foreman relieved of responsibilities for inspection, use, operation, and care."

Moore was thirty years of age and had been a member of Wiggins' crew for ten years. During most of that entire period he had operated the section car. Wiggins, who was sixty-five years of age, testified that he had Moore operate the car because he was not physically able to do so. Moreover, both Wiggins and Moore were before the jury and it was shown that Moore had normal eyesight and that Wiggins' eyes were apparently defective. Moore was permitted to testify that he was operating the car at the time of the accident, and that he did not have written permission to operate it. The court, however, declined to permit the plaintiff to show: (1) That Moore had been given permission to operate the car by his immediate superior, Bragg, the roadmaster; (2) that for a long time Wiggins' immediate superior knew that the motor car was being operating by Moore, and had made no objection to such operation; and (3) that it was long the custom and practice of those in authority to permit Moore to run the car over the section where he worked and where Wiggins was the foreman.

The two rules adverted to are not altogether clear in that the first rule, 1169, provides that "written permission" must be granted for the operation of cars, and the second rule, XII–3, provides that the foreman shall operate the car "unless he has on the force a man better fitted to do so." It appears that Moore was "better fitted" than Wiggins to operate the car, and that as a matter of fact he had operated it without objection for approximately ten years. It was error for the court to preclude the admission of evidence showing the customary and practical construction given to these

rules, and that the provisions of Rule 1169, if applicable to this situation at all, had been waived by those in authority and that it had in practice been honored more in the breach than in the observance. Illinois Cent. R. Co. v. Skinner's Adm'x, 177 Ky. 62, 197 S.W. 552, certiorari denied, 246 U.S. 663, 38 S.Ct. 333, 62 L.Ed. 928; Bussey v. Charleston & W. C. R. Co., 78 S.C. 352, 58 S.E. 1015; Louisville & Nashville Railroad v. Grizzard, 238 Ala. 49, 189 So. 203, certiorari denied, 308 U.S. 603, 60 S.Ct. 140, 84 L.Ed. 504; 22 C.J. Evidence § 647, p. 548.

 It is without dispute that Wiggins was riding in a position near the front of the motor car and ahead of Moore. Under the facts shown, it was his duty to keep a lookout, and even if Moore was rightfully operating the car Wiggins was not thereby relieved of that duty. Whether or not Moore had authority to operate the car would only go to the degree of negligence attributable to Wiggins. Cf. Reynolds v. New York, O. & W. Railway, 2 Cir., 42 F. 2d 164; Miller v. Central Railway, 2 Cir., 58 F.2d 635; Atlantic Coast Line Railway Co. v. Jeffcoat, 214 Ala. 317, 107 So. 456, certiorari denied, 271 U.S. 688, 46 S.Ct. 639, 70 L.Ed. 1152.

The defendant railroad was guilty of negligence in leaving the Lake Charm switch open and unguarded against the main line, and it is clear that but for the open switch the motor car would not have been derailed, and Wiggins would not have been injured. Under the provisions of the Federal Employers' Liability Act, where, as here, negligence on the part of the employer is shown, contributory negligence on the part of the injured employee does not bar recovery but simply requires that the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee, 45 U.S.C.A. § 53 and notes, and it is well-settled that such degrees of negligence are to be determined and compared by the jury under the facts and circumstances of the particular case. Union Pacific R. Co. v. Hadley, 246 U.S. 330, 331, 38 S.Ct. 318, 62 L.Ed. 751; Rocco v. Lehigh Valley R. Co., 288 U.S. 275, 53 S.Ct. 343, 77 L.Ed. 743; Kansas City, M. & O. R. Co. of Texas v. Finke, Tex.Civ. App., 190 S.W. 1143, certiorari denied, 245 U.S. 656, 38 S.Ct. 13, 62 L.Ed. 534; Ballard v. Atchison, T. & S. F. R. Co., 5 Cir., 100 F.2d 162; Atchison, T. & S. F. R. Co. v. Ballard, 5 Cir., 108 F.2d 768; Seaboard

Air Line R. Co. v. Tilghman, 237 U.S. 499, 35 S.Ct. 653, 59 L.Ed. 1069.

This case was clearly one for the jury and the court erred in directing a verdict for the defendants. The judgment is reversed and the cause remanded for further proceedings in conformity with this opinion.

Reversed and remanded.