# CHESAPEAKE & OHIO RAILWAY COMPANY v. KELLY, ADMINISTRATRIX OF KELLY.

## ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 321.   Argued April 19, 20, 1916.—Decided June 5, 1916.

*Minneapolis & St. Louis R. R.* v. *Bombolis, ante,* p. 211, followed to the effect that the Seventh Amendment does not apply to actions under the Employers' Liability Act brought in the state courts.

While the Employers' Liability Act does not require the damages to be apportioned among the beneficiaries, *quære,* and not now decided, whether such an apportionment is prohibited by the Act.

Damages under the Employers' Liability Act should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased employee.

A given sum of money in hand is worth more than the like sum payable in the future; and where a verdict is based upon the deprivation of future benefits, the ascertained amount of these should ordinarily be discounted so as to make the verdict equivalent to their present value.

In an action brought in a state court under the Employers' Liability Act, questions of procedure and evidence are to be determined according to the law of the forum; but the question of the proper measure of damages is inseparably connected with the right of action, and must be settled according to general principles of law as administered in the Federal courts.

160 Kentucky, 296; 161 Kentucky, 655, reversed.

THE facts, which involve the application of the Seventh Amendment to cases in the state court under the Employers' Liability Act, the construction and application of that Act, and the validity of a judgment in an action thereunder, are stated in the opinion.

*Mr. David H. Leake,* with whom *Mr. John T. Shelby, Mr. E, L. Worthington, Mr. W. D. Cochran, Mr. Le Wright Browning* and *Mr. Walter Leake* were on the brief, for plaintiff in error.[1]

*Mr. Edward C. O'Rear,* with whom *Mr. B. G. Williams* and *Mr. F. W. Clements* were on the brief, for defendant in error:

The verdict was sustained by the preponderance of evidence. Civil Code (Ky.), §§ 340–341; *Hurt* v. *L. & N. R. R.,* 116 Kentucky, 553; *L. & N. R. R.* v. *Chambers,* 165 Kentucky, 703.

Instruction B offered by plaintiff in error was erroneous. *Railroad Co.* v. *Steinburg,* 17 Michigan, 99; 60 Cong. Record, 1st Sess., p. 4527; Sen. Rep. 432, 61st. Cong. 2d Sess., March 22, 1910, p. 2. As to present value theory see *C. & O. Ry.* v. *Dixon,* 104 Kentucky, 613; *L. & N. R. R.* v. *Morris,* 14 Kentucky L. R. 466; *L. & N. R. R.* v. *Graham,* 99 Kentucky, 688; *L. & N. R. R.* v. *Trammell,* 93 Alabama, 354; *L. & N. R. R.* v. *Orr,* 91 Alabama, 548; *C. & O. Ry.* v. *Long,* 100 Kentucky, 221; *L. & N. R. R.* v. *Simrall,* 127 Kentucky, 55.

MR. JUSTICE PITNEY delivered the opinion of the court.

In this action, which was founded upon the Employers' Liability Act of Congress of April 22, 1908 (c. 149, 35 Stat. 65), as amended by act of April 5, 1910 (c. 143, 36 Stat. 291), defendant in error, as administratrix of Matt Kelly, deceased, recovered a judgment in the Mont-

---

[1] See note on p. 212, *ante.*

gomery Circuit Court for damages because of the death of the intestate while employed by plaintiff in error in interstate commerce. The verdict was for $19,011, which was apportioned among the widow and infant children of the deceased, excluding a son who had attained his majority. The Court of Appeals of Kentucky affirmed the judgment, and denied a rehearing. 160 Kentucky, 296; 161 Kentucky, 655.

Upon the present writ of error the first contention is that the limitation of the Seventh Amendment to the Federal Constitution preserving the common law right of trial by jury inheres in every right of action created under the authority of that Constitution, and that because, as is said, the courts of Kentucky are unable to secure that right to litigants by reason of a law of the State passed pursuant to a provision of its constitution, by the terms of which in all trials of civil actions in the circuit courts three-fourths or more of the jurors concurring may return a verdict, those courts are without jurisdiction of actions arising under the Federal Employers' Liability Act. This contention has been set at rest by our recent decision in *Minneapolis & St. Louis R. R.* v. *Bombolis, ante,* p. 211.

The only other matter requiring consideration is the instruction of the trial court, affirmed by the Court of Appeals, respecting the method of ascertaining the damages. We may say in passing that while the act of Congress does not require that in such cases damages be apportioned among the beneficiaries (*Central Vermont Ry.* v. *White,* 238 U. S. 507, 515), it is not in the present case insisted that the Act prohibits such an apportionment, and if there be any question about this it is not now before us.

Respecting the matter with which we have to deal, the trial court, after stating that if the jury should find for the plaintiff they should fix the damages at such sum

as would reasonably compensate the dependent members of Kelly's family for the pecuniary loss, if any, shown by the evidence to have been sustained by them because of Kelly's injury and death; and that in fixing the amount they were authorized to take into consideration the evidence showing the decedent's age, habits, business ability, earning capacity, and probable duration of life, and also the pecuniary loss, if any, which the jury might find from the evidence that the dependent members of his family had sustained because of being deprived of such mainte-nance or support or other pecuniary advantage, if any, which the jury might believe from the evidence they would have derived from his life thereafter; proceeded as follows: "If the jury find for the plaintiff they will find a gross sum for the plaintiff against the defendant which must not exceed the probable earnings of Matt Kelly had he lived. The gross sum to be found for plaintiff, if the jury find for the plaintiff, must be the aggregate of the sums which the jury may find from the evidence and fix as the pecuniary loss above described, which each dependent member of Matt Kelly's family may have sustained by his death;" following this with an instruc-tion respecting the apportionment, with which, as we have said, we are not now concerned. Defendant requested an instruction that the jury should "fix the damages at that sum which represents the present cash value of the reason-able expectation of pecuniary advantage . . . to said Addie Kelly during her widowhood and while dependent, and pecuniary advantage to said infant children while dependent and until they become twenty-one years of age." This was refused.

Laying aside questions of form, the Court of Appeals treated the instruction given and the refusal of the re-quested instruction as raising the question "that what the beneficiary is entitled to is not a lump sum equal to what he would receive during the estimated term of de-

pendency, but the present cash value of such aggregate amount." Defendant's contention was overruled upon the ground that the whole loss of the beneficiaries is sustained at the time of the death of the party in question, the court saying: "While that loss is, in a measure, future support, the father's death precipitated it, so that it is all due, and we are not impressed with the argument that the sum due should be reduced by rebate or discount. The value of a father's support is not so difficult to estimate, and the average juryman is competent to compute it, but to figure interest on deferred payments, with annual rests, and reach a present cash value of such loss to each dependent is more than ought to be asked of anyone less qualified than an actuary."

We are constrained to say that in our opinion the Court of Appeals erred in its conclusion upon this point. The damages should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased. *Mich. Cent. R. R.* v. *Vreeland*, 227 U. S. 59, 70, 71; *American R. R. of Porto Rico* v. *Didricksen*, 227 U. S. 145, 149; *Gulf, Colorado &c. Ry.* v. *McGinnis*, 228 U. S. 173, 175. So far as a verdict is based upon the deprivation of future benefits, it will afford more than compensation if it be made up by aggregating the benefits without taking account of the earning power of the money that is presently to be awarded. It is self-evident that a given sum of money in hand is worth more than the like sum of money payable in the future. Ordinarily a person seeking to recover damages for the wrongful act of another must do that which a reasonable man would do under the circumstances to limit the amount of the damages. *Wicker* v. *Hoppock*, 6 Wall. 94, 99; *The Baltimore*, 8 Wall. 377, 387; *United States* v. *Smith*, 94 U. S. 214, 218; *Warren* v. *Stoddart*, 105 U. S. 224, 229; *United States* v. *Fidelity Co.*, 236 U. S. 512, 526. And

the putting out of money at interest is at this day so common a matter that ordinarily it can not be excluded from consideration in determining the present equivalent of future payments, since a reasonable man, even from selfish motives, would probably gain some money by way of interest upon the money recovered. Savings banks and other established financial institutions are in many cases accessible for the deposit of moderate sums at interest, without substantial danger of loss; the sale of annuities is not unknown; and, for larger sums, state and municipal bonds and other securities of almost equal standing are commonly available.

Local conditions are not to be disregarded, and besides, there may be cases where the anticipated pecuniary advantage of which the beneficiary has been deprived covers an expectancy so short and is in the aggregate so small that a reasonable man could not be expected to make an investment or purchase an annuity with the proceeds of the judgment. But, as a rule, and in all cases where it is reasonable to suppose that interest may safely be earned upon the amount that is awarded, the ascertained future benefits ought to be discounted in the making up of the award.

We do not mean to say that the discount should be at what is commonly called the "legal rate" of interest; that is, the rate limited by law, beyond which interest is prohibited. It may be that such rates are not obtainable upon investments on safe securities, at least without the exercise of financial experience and skill in the administration of the fund; and it is evident that the compensation should be awarded upon a basis that does not call upon the beneficiaries to exercise such skill, for where this is necessarily employed the interest return is in part earned by the investor rather than by the investment. This, however, is a matter that ordinarily may be adjusted by scaling the rate of interest to be adopted in computing

the present value of the future benefits; it being a matter of common knowledge that, as a rule, the best and safest investments, and those which require the least care, yield only a moderate return.

We are not in this case called upon to lay down a precise rule or formula, and it is not our purpose to do this, but merely to indicate some of the considerations that support the view we have expressed that, in computing the damages recoverable for the deprivation of future benefits, the principle of limiting the recovery to compensation requires that adequate allowance be made, according to circumstances, for the earning power of money; in short, that when future payments or other pecuniary benefits are to be anticipated, the verdict should be made up on the basis of their present value only.

We are aware that it may be a difficult mathematical computation for the ordinary juryman to calculate interest on deferred payments, with annual rests, and reach a present cash value. Whether the difficulty should be met by admitting the testimony of expert witnesses, or by receiving in evidence the standard interest and annuity tables in which present values are worked out at various rates of interest and for various periods covering the ordinary expectancies of life, it is not for us in this case to say. Like other questions of procedure and evidence, it is to be determined according to the law of the forum.

But the question of the proper measure of damages is inseparably connected with the right of action, and in cases arising under the Federal Employers' Liability Act it must be settled according to general principles of law as administered in the Federal courts.

We are not reminded that in any previous case in this court the precise question now presented has been necessarily involved. But in two cases the applicability of present values has been recognized.

*Vicksburg &c. R. R.* v. *Putnam,* 118 U. S. 545, was a

review of a judgment recovered in a Circuit Court of the
United States in an action for personal injuries where the
damages claimed included compensation for the impair-
ment of plaintiff's earning capacity. Assuming for pur-
poses of illustration that plaintiff's expectancy of life was
thirty years, the trial judge instructed the jury (p. 551)
that it would not be proper to allow him in gross the sum
of the annual losses during his expectancy, "for the
annuity will be payable one part this year and another
part next year, and each of the thirty parts payable each
of the thirty years. You must have a sum such that when
he dies it will all be used up at the end of thirty years."
Having called attention to certain tables that were in
evidence, he proceeded to say: "Add that to the present
worth of annuity if you find he was damaged." The
judgment was reversed, not because of the recognition of
the rule of present values, but because of the conclusive
force that was given by the trial judge to the life and
annuity tables. In the course of the opinion the court, by
Mr. Justice Gray, said (p. 554) that the compensation
should include "a fair recompense for the loss of what he
would otherwise have earned in his trade or profession,
and has been deprived of the capacity for earning by the
wrongful act of the defendant. . . . In order to
assist the jury in making such an estimate, standard life
and annuity tables, showing at any age the probable
duration of life, and the present value of a life annuity,
are competent evidence. . . . But it has never been
held that the rules to be derived from such tables or
computations must be the absolute guides of the judg-
ment and the conscience of the jury."

In *Pierce* v. *Tennessee Coal &c. Railroad Co.*, 173 U. S.
1, which was an action founded upon defendant's breach
and abandonment of a contract of employment construed
by this court to be limited only by plaintiff's life, the trial
court ruled (p. 6) that no recovery could be allowed be-

yond the instalments of wages due up to the date of the
trial, refusing to charge, as requested by plaintiff, that
he was "entitled to the full benefit of his contract, which
is the present value of the money agreed to be paid and the
articles to be furnished under the contract for the period of
his life, if his disability is permanent," etc. This court
held (p. 10) that the Circuit Court had erred in restricting
the damages as mentioned and in declining to instruct the
jury in accordance with plaintiff's request; citing *Vicks-
burg &c. R. R. v. Putnam, ubi supra,* and quoting the
reference to the "present value of a life annuity"; and
also citing (p. 13) *Schell v. Plumb,* 55 N. Y. 592, and mak-
ing the following quotation from the opinion of the Court
of Appeals of New York in that case: "Here the contract
of the testator was to support the plaintiff during her
life. That was a continuing contract during that period;
but the contract was entire, and a total breach put an end
to it, and gave the plaintiff a right to recover an equivalent
in damages, which equivalent was the present value of her
contract."

That where future payments are to be anticipated and
capitalized in a verdict the plaintiff is entitled to no more
than their present worth, is commonly recognized in the
state courts. We cite some of the cases, but without in-
tending to approve any of the particular formulæ that
have been followed in applying the principle; since in this
respect the decisions are not harmonious, and some of
them may be subject to question. *Louis. & Nash. R. R.
v. Trammell,* 93 Alabama, 350, 355; *McAdory v. Louis. &
Nash. R. R.,* 94 Alabama, 272, 276; *Central R. R. v. Rouse,*
77 Georgia, 393, 408; *Atlanta & W. P. R. R. Co. v. Newton,*
85 Georgia, 517, 528; *Kinney v. Folkerts,* 78 Michigan, 687,
701; 84 Michigan, 616, 624; *Hackney v. Del. & Atl. Tel.
Co.,* 69 N. J. Law, 335, 337; *Gregory v. N. Y., Lake Erie &
West. R. R.,* 55 Hun (N. Y.), 303, 308; *Benton v. Railroad,*
122 N. Car. 1007, 1009; *Poe v. Railroad,* 141 N. Car. 525,

528; *Johnson* v. *Railroad*, 163 N. Car. 431, 452; *Goodhart* v. *Pennsylvania R. R.*, 177 Pa. St. 1, 17; *Irwin* v. *Pennsylvania R. R.*, 226 Pa. St. 156; *Reitler* v. *Pennsylvania R. R.*, 238 Pa. St. 1, 7; *McCabe* v. *Narragansett Lighting Co.*, 26 R. I. 427, 435; *Houston & T. C. R. R.* v. *Willie*, 53 Texas, 318, 328; *Rudiger* v. *Chicago &c. R. R.*, 101 Wisconsin, 292, 303; *Secord* v. *John Schroeder Co.*, 160 Wisconsin, 1, 7. See also *St. Louis, I. M. & S. Ry.* v. *Needham* (C. C. A. 8th), 52 Fed. Rep. 371, 377; *Balt. & Ohio R. R.* v. *Henthorne* (C. C. A. 6th), 73 Fed. Rep. 634, 641.

*Judgment reversed and the cause remanded for further proceedings not inconsistent with this opinion.*