Anna Marie **DIXON,** Administratrix of Estate of Oscar Theodore Dixon, Plaintiff-Appellant,

v.

**SERODINO, INC.,** Defendant-Appellee.[1]

No. 15358.

United States Court of Appeals
Sixth Circuit.

May 7, 1964.

---

1. We have not included in this title the names and status of Central Soya Company, Inc., or Cargo Carriers, Inc., impleaded as third parties. The cause was tried solely as to the Jones Act claim of plaintiff against the defendant Serodino, Inc.

Don Moore, Jr., Chattanooga, Tenn., Moore & Wild, Chattanooga, Tenn., of counsel, for appellant.

Sizer Chambliss, Chattanooga, Tenn., F. Thornton Strang, Chattanooga, Tenn., on brief; Strang, Fletcher, Carriger & Walker, Sizer Chambliss, Chattanooga, Tenn., of counsel, for appellees.

Before O'SULLIVAN, Circuit Judge, and McALLISTER and MAGRUDER, Senior Circuit Judges.

O'SULLIVAN, Circuit Judge.

Plaintiff-appellant, Anna Marie Dixon, is the widow and administratrix of the estate of Oscar Theodore Dixon, who was fatally injured when he fell through an open hatch on a barge. He was a seaman, employed by defendant-appellee Gerodino, Inc., the owner of a motor vessel, Midwestern, plying the Mississippi in its barge commerce. The fatal accident occurred June 16, 1961. Action was brought for wrongful death under the Jones Act, Title 46, U.S.C.A. § 688. A jury found plaintiff's decedent and the employer-defendant both guilty of negligence, assessing 85% of such negligence to the deceased seaman and 15% to defendant, his employer. Damages were assessed at $30,000.00 and a judgment for 15% thereof, $4,500, was entered for plaintiff. Plaintiff's position here, as it was on her motion for new trial, is that errors of the District Judge led to an inadequate award of damages and improper division of responsibility between her seaman husband and the vessel owner.

We discuss plaintiff's asserted grounds for reversal as follows:

1) *Evidence of plaintiff's marital history.*

Error is charged on the extent to which the District Judge permitted inquiry into plaintiff's marital history. Plaintiff was 27 years old at the time of trial. The deceased, Oscar Theodore Dixon, was her fourth husband. Her first husband died. It is not clear whether she was divorced or widowed from her second husband. She was divorced from her third husband. The deceased Dixon had also been divorced just prior to his marriage to plaintiff. The Dixons were married December 25, 1959. In October, 1960, Anna started a divorce action against the deceased. Her complaint charged that her husband would not support her, that he stayed in an intoxicated condition practically all the time and that it was necessary for her to work in order to feed and clothe herself. The record is not clear as to what became of this divorce action, but we assume that it had been dropped before Dixon's death.

In addition to seeking damages for the loss of future support that she expected from her deceased husband, plaintiff charged that her minor son, Milburn Raymond Green, Jr., aged 11, was a dependent of the deceased Dixon

and entitled to damages for the latter's death. This child was the son of Anna Marie Dixon and her first husband, Green. Plaintiff gave evidence that the said child had been living with herself and Oscar Dixon and that Dixon had supported him. With this claim in evidence, it was proper for defendant to bring out that the home occupied by plaintiff and her child at the time of Dixon's death had come to her and her son from the first husband, Green. Plaintiff's proofs also showed that the minor child was receiving $40.50 per month as a social security benefit from his father. Inquiry was made as to whether plaintiff's son had been adopted or supported by either of the husbands that intervened between Green and Dixon.

■ Over objection to some of the questions, the District Judge permitted restricted inquiry into the above subjects. He allowed this evidence to be considered only on the subject of the extent of support contributed by deceased to the child and to the plaintiff. Defendant's counsel offered further evidence on the plaintiff's marital difficulties out of the presence of the jury. Such evidence was claimed to be relevant to the jury's consideration of the likelihood that plaintiff would have remained married to deceased and to the possibility of plaintiff's remarriage following a breakup of her marriage to the deceased. The District Judge, however, properly excluded such evidence. Louisville & N. R. Co. v. Tucker, 211 F.2d 325, 334 (C.A. 6, 1954); Naylor v. Isthmian S. S. Co., 187 F.2d 538, 541 (C.A. 2, 1951).

■ Damages awardable to a widow and minor child for the wrongful death of a husband and father, or person in loco parentis, include the present worth of such an amount as the widow and child might reasonably have expected to receive from the deceased for support over the latter's probable life expectancy.[2] As stated in plaintiff's brief,

"[T]he damages recoverable under the Jones Act * * * are equiv-

alent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased. Chesapeake & Ohio R. Co. v. Kelly, 241 U.S. 485, 489 [36 S.Ct. 630], 60 L.Ed. 1117; Gulf C. & S. F. Ry. v. Moser, 275 U.S. 133 [48 S.Ct. 49], 72 L.Ed. 200."

■ Evidence of the deceased's habits of work and his conduct as a provider would help a jury arrive at a proper award of damages. We think that the evidence admitted was relevant to this subject and that the inquiry was kept within reasonable bounds. In large measure, the extent of permissible inquiry in this regard was within the discretion of the District Judge. Miller v. Alexandria Truck Lines, Inc., 273 F.2d 897, 900, 901 (C.A. 5, 1960).

■ Appellant relies on the case of Louisville & N. R. Co. v. Tucker, 211 F.2d 325, 333, 334 (C.A. 6, 1954) to support her claim of impropriety in admission of the allegations in her divorce complaint. That case involved an action by a husband for the wrongful death of his wife. We there sustained a district judge's refusal to allow defendant to show that plaintiff and his deceased wife were estranged and that a divorce case was pending. Such evidence, however, was not offered on the question of the worth of the deceased wife as a housekeeper, or relevant to her habits in that regard. In the case before us, plaintiff had testified to receiving support from her husband, whom she described as a steady worker and good provider. The allegations of her divorce complaint strongly contradicted her on such issue.

2) *Instruction on presumption of due care.*

Error is charged in the District Judge's refusal to give the following instruction requested by plaintiff:

"I further charge you that a presumption existed that Oscar Dixon

2. Limited generally to the expectancy of the widow and the minority of the child.

was actually engaged in the performance of his duties and that he exercised due care for his own safety at the time of his death."

Had an instruction containing the foregoing been combined with the necessary qualifications to the rule stated, it could and should have been given. But wholly apart from the fact that failure to give such instruction was not saved as a question for review by observing the requirement of Rule 51, F.R. Civ.P., we do not consider that reversible error was committed in refusing to give it in the form in which it was presented.

The fatal accident involved occurred in the night time on the Mississippi River at Cairo, Illinois, while the defendant's motor vessel was in the process of assembling a tow of barges. Decedent, Dixon, was a deckhand on the vessel. With one barge already on its front end, the Midwestern was connecting a second barge, identified as the RT–410. The captain of the Midwestern, the deceased, and another deckhand, one Gene Ray, were on duty. Ray and Dixon were performing duties at the stern end of the RT–410. There was evidence that the tow boat Midwestern had two flood lights, "that shines out over the barges" and that such lights were on during the operation in question. This was disputed by the deckhand Ray, who testified that he and Dixon were working more or less in the dark. Dixon's assignment at the time of the accident was to put out three running lights at the forward end of the barge RT–410 and to turn its head line loose. To accomplish this with due care, he had to pick up the lantern running lights from the forward end of the barge to which the RT–410 was being made fast, go aboard the RT–410 and then, carrying the lanterns, proceed to its forward end along such route and in such manner as due care would suggest need be followed. The superstructure of the RT–410 cargo box extended above the deck of the barge about 3 feet at its sides and about 5 feet in the center. Two rows of hinged hatch covers, divided by an eighteen inch level surface, extended sub- stantially over the length of the cargo box. There was level deck space around the above deck portion of the cargo box about three feet wide on each side of it, and somewhat wider deck space at either end of the cargo box. Dixon was seen by his fellow deckhand to pick up the three running lights, go aboard the RT–410, and "jumped up on the top of the cargo box," at its right rear. He was last seen when he had so jumped. From pictures in evidence, it is apparent that he would then be within a step from the first opening in the cargo box. The hatch cover to this opening had not been closed and Dixon fell into the hold. He was not seen to fall by anyone, but it was a matter of seconds until witness Ray, "heard something that sounded like it fell in the river." He could not then see Dixon, but heard him breathing. He crawled up on the cargo box and could see that the hatch was open. The deceased, Dixon, was found at the bottom of the barge with the fatal injuries from which he expired in the afternoon of the next day.

From the foregoing, it is clear that there was eyewitness evidence as to Dixon's conduct up to the brink of his fall through the open hatch. A jury could justifiably infer that his fall was the consequence of his negligent failure to observe the open hatch or his failure to take a course to the end of the barge along available and safe deck space. Even though there was no eyewitness to his actual fall, there was evidence of conduct which the jury could find was negligent and contributory to his unfortunate and fatal injury. He was carrying three running lights and a flash light as he chose to jump up on the cargo box and proceed as he did to the open hatch, whether in the dark or with light shining on it. If the fact that no one saw him take the final step that led to his fall raised a presumption of due care applicable to the last instant of his action, there was evidence from which a jury could find as a fact that the presumption had been rebutted by direct evidence. Daulton v. Southern Pacific Company, 9 Cir., 237 F.2d 710, 713.

Substantive Federal law controls Jones Act litigation, which in turn is governed in general by the rules and decisions which enforce the Federal Employees Liability Act, Title 45 U.S.C.A. § 51 et seq. Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed. 2d 493; Ferguson v. Moore-McCormack Lines, Inc., 352 U.S. 521, 77 S.Ct. 459, 1 L.Ed.2d 515; De Lima v. Trinidad Corporation, 302 F.2d 585, 588 (C.A.2, 1962); Urie v. Thompson, 337 U.S. 163, 172, 69 S.Ct. 1018, 93 L.Ed. 1282. We need not here, however, attempt to find a Federal rule distinct from state decisions upon how far the involved presumption of due care may be employed to establish freedom from contributory negligence, or to resist evidence offered by a defendant to meet its burden of proving it affirmatively. Without attempting review of individual cases, the following text from 25 C.J.S. Death, fairly states the general rule.

"[T]he general rule is that there is a presumption, in the absence of eyewitnesses to the accident or other evidence sufficient to dispel or rebut it, that decedent, acting in the instinct of self-preservation, was in the exercise of ordinary care. * * * The presumption does not apply where there are eyewitnesses to the accident who are credible and whose testimony is competent and material, even though it may be in conflict." § 80, pp. 1207–1209.

In Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 34, 64 S.Ct. 409, 412, 88 L.Ed. 520, an FELA case, where there were no eyewitnesses to a deceased's conduct at or close to the time of his death, but there were some physical facts that might throw some light on events, the Supreme Court said:

"To this evidence must be added the presumption that the deceased was actually engaged in the performance of those duties and exercised due care for his own safety at the time of his death. Looney v. Metropolitan R. Co., 200 U.S. 480, 488 [26 S.Ct. 303, 306, 50 L.Ed. 564]."

In the Looney case the Supreme Court stated the rule thusly:

"If there *is no evidence* which speaks one way or the other with reference to contributory negligence of the person killed, then it is presumed that there was no such negligence."

Whether the presumption completely disappears when there is evidence that an eyewitness exists, whether it merely shifts the burden of proof, or whether it may be weighed against evidence rebutting it, common to all views of the rule is recognition that it is not absolute; all authorities agree that the presumption does not forbid a jury finding against it on the basis of credible direct evidence descriptive of a deceased's conduct. The proffered request contained nó qualification or limitation and would have effectively foreclosed the jury's consideration of contributory negligence. We need not decide whether there remained any presumption after the eyewitness' testimony of the deckhand Ray. Suffice it to say that the instruction could not be given as tendered. We do not think that, in this case, it was the District Judge's responsibility to have reconstructed and expanded the proffered instruction so as to submit a proper discussion of its subject matter to the jury. The appendices before us do not tell when it was proffered, whether at the beginning of the trial, as directed by the pretrial order, or before or after the eyewitness Ray's testimony. But, in all events, Rule 51 F.R.Civ.P. was not complied with and we think the situation here rather specially called for compliance with the rule.

3) *Failure to give plaintiff's request No. 7.*

■■■ Plaintiff requested the Court to instruct the jury as follows:

"I further charge you that the obligation of a shipowner to his seamen is substantially greater than that of an ordinary employer to his employees."

Such statement has been approved as an abstract principle of law—Koehler v.

Presque Isle Transp. Co., 141 F.2d 490, 492 (C.A. 2, 1944); Armit v. Loveland, 115 F.2d 308, 311 (C.A. 3, 1940)—evidencing admiralty's special solicitude for the safety of seamen. We find no case, however, suggesting the necessity or appropriateness of making it the subject of an instruction. Nothing in the case before us suggests any such need and, given abstractly, an instruction of that kind would require the jury to weigh the alleged negligent conduct of a specific defendant against the undefined conduct of an hypothetical "ordinary employer."

The jury here found defendant guilty of actionable negligence unaided by the extra prod that the proffered instruction might have provided. Aside from the fact that, here too, Rule 51 was not complied with, we find no reversible error in the refusal to give the requested instruction.

4) *Failure of jury to award any damages for pain and suffering.*

■ The District Judge advised the jury that if they found for plaintiff they should award such an amount as would reasonably compensate for any pain and suffering that they found was experienced by the deceased Dixon. Damages for pain and suffering are recoverable in actions under the Jones Act. Hutchison v. Pacific Atlantic Steamship Co., 217 F.2d 384, 386 (C.A. 9, 1954); The Black Gull, 82 F.2d 758, 760 (C.A. 2, 1936). The judge submitted a special interrogatory calling for their assessment of damages for pain and suffering, if any. No such damages were awarded.

There was no direct evidence that the deceased Dixon underwent any pain or suffering. The proofs were that the deceased Dixon was unconscious from the time of the accident until his death, except for such inference as could have been drawn from the following testimony given by the captain of the tow boat.

"Q. When you first got him out of the hold do you recall that you could tell him to be still and that he would?

"A. Yes, I could talk to him.

"Q. And would he respond?

"A. For a second or two, yes. He was grunting and going on.

"Q. He was groaning?

"A. Yes."

And from the following testimony of the deckhand Ray as to Dixon's condition when he was brought up from the hold.

"Q. You know that he was conscious enough to take directions?

"A. Yes, sir.

"Q. They told him to be still, and he would, and that sort of thing?

"A. Yes, sir.

■ From the foregoing, we conclude that it was within the province of the jury to infer that the deceased experienced no compensable pain or suffering. We find no error in the District Judge's denial of a new trial bottomed on the jury's failure to award damages for pain and suffering.

5) *Failure to award damages to deceased's stepson.*

■ The District Judge submitted an interrogatory to the jury as to what damages, if any, they awarded to deceased's minor stepson, Milburn Haywood Green. This minor was 12 years old at the time of trial and was plaintiff's child by her first husband. The boy was living with his mother and deceased in a home that came to his mother from her first husband. The boy was receiving $40.50 per month as a social security benefit from the death of his father. Plaintiff had stated in a deposition before trial that the above amount was adequate to support the boy in the home that had been provided by his father. This she repudiated at the trial. There was also evidence casting some doubt upon the claim that deceased had stood in loco parentis to the boy. We think it was the jury's province to determine these questions, including whether the deceased's death had deprived the boy of support that he would have otherwise received from the deceased.

6) *Inadequacy of verdict.*

The jury's verdict fixed the damages at $30,000.00. The District Judge denied plaintiff's request for a new trial made on the ground of the verdict's inadequacy. This was a matter within the discretion of the District Judge. Cross v. Thompson, 298 F.2d 186, 187 (C.A. 6, 1962). We are not persuaded that he abused his discretion in this instance. We have considered other claims of error made by appellant and they do not disclose reversible error.

Judgment affirmed.