Joseph E. **SLEEMAN**, Plaintiff-Appellee,

v.

The **CHESAPEAKE AND OHIO RAIL-WAY COMPANY**, Defendant-Appellant.

No. 18534.

United States Court of Appeals
Sixth Circuit.

July 25, 1969.

---

Paul O. Strawhecker, Grand Rapids, Mich., for appellant, Robert A. Straub, Detroit, Mich., on the brief.

F. William McKee, Grand Rapids, Mich., for appellee, Rhoades, McKee & Boer, Grand Rapids, Mich., on the brief.

Before PHILLIPS, EDWARDS and PECK, Circuit Judges.

EDWARDS, Circuit Judge.

Appellant, Chesapeake and Ohio Railway Co., appeals from an award of damages entered in favor of an employee, Joseph Sleeman, after a trial under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60 (1964), before a District Judge in the Western District of Michigan.

The first and principal contention is that contrary to Sleeman's argument and the findings of the District Judge, the design and lighting of the parking lot owned by appellant railroad where Sleeman was injured did not play any part at all in his injury.

Sleeman was injured by being struck by a privately-owned mail truck as it was leaving the C & O station in Grand Rapids. At the time he was on duty as an assistant coach foreman working the night shift. It was raining hard when Sleeman attempted at about 5:50 a. m. to go from a coach to his car in the station parking lot, and thence to his office in the coach yard. As he was crossing an area of the parking lot in front of the C & O station which was used by both pedestrian and vehicular traffic, he was struck by the mail truck. Sleeman testified that he had looked and had seen the mail truck, but had judged that it would pass behind him and that he continued across the area without looking again until the instant of impact. The impact occurred in the left-hand portion of the vehicular accessway, viewed from the point of view of the driver of the truck.

Plaintiff presented evidence, including an expert on design of parking lots, which tended to establish that the lighting of the C & O lot at the point of injury was below nationally recognized standards and that the design of the lot failed by layout or markings to define either vehicular or pedestrian lanes.

The Federal Employers' Liability Act provides in part:

"Every common carrier * * * shall be liable in damages to any person suffering injury while he is employed by such carrier * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51 (1964).

The Supreme Court has interpreted this language as follows:

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights

primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due 'in whole or *in part*' to its negligence. (Emphasis added.)

"The law was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence." Rogers v. Missouri Pacific R. R., 352 U.S. 500, 506–507, 77 S.Ct. 443, 449, 1 L.Ed.2d 493 (1957). (Footnotes omitted.)

■ The District Judge was the trier of the facts in this case. We think there was evidence before him from which he could have concluded that the C & O was negligent because of inadequate lighting and failure in any manner to define either vehicular or pedestrian traffic lanes in its parking lot. We cannot say that the "employer's negligence [did not] play * * * any part, even the slightest, in producing the injury." Rogers v. Missouri Pacific R. R., 352 U.S. 500, 506, 77 S.Ct. 443, 448 (1957).

Appellant also contends that the District Judge erred in finding plaintiff Sleeman not guilty of contributory negligence because "the undisputed proof" was contrary. Where, however, an area of irregular shape is created for public use by vehicles and pedestrians and there is no definition of the driveway, we cannot hold as a matter of law that Sleeman's conduct on the night in question was contrary to that of an ordinarily prudent person. *Cf*. Ware v. Nelson, 351 Mich. 390, 88 N.W.2d 524 (1958).

■ Appellant did not timely file a request for a jury trial. We find no abuse of judicial discretion in the District Judge's denial of appellant's belated demand for jury trial. Nor do we find such abuse in the grant of separate trial in C & O's suit for contribution against the truck driver and owner.

No other appellate issues of substance are presented, except for one dealing with damages.

■ The District Judge did, as appellant asserts, decide to award damages without reducing them to present worth. He did so because he held that inflationary trends would offset any present worth reduction. *See* Gowdy v. United States, 271 F.Supp. 733 (W.D.Mich. 1967).

Damages in an FELA case are governed by federal law:

"[T]he proper measure of damages is inseparably connected with the right of action, and in cases arising under the Federal Employers' Liability Act it must be settled according to general principles of law as administered in the Federal courts." Chesapeake & Ohio Ry. v. Kelly, 241 U.S. 485, 491, 36 S.Ct. 630, 632, 60 L.Ed. 1117 (1916).

This same case provides:

"[I]n computing damages recoverable for the deprivation of future benefits, the principle of limiting the recovery to compensation requires that adequate allowance be made, according to circumstances, for the earning power of money; in short, that when future payments or other pecuniary benefits are to be anticipated, the verdict should be made up on the basis of their present value only." Chesapeake & Ohio Ry. v. Kelly, *supra* at 491, 36 S.Ct. at 632.

To date Chesapeake & Ohio Ry. v. Kelly has not been amended or overruled, and it was error to fail to apply it to the computation of future earnings.

As to the inflationary trend offset, this record provides no evidentiary basis for the decision of the District Judge. Gowdy v. United States, *supra*, in which the District Judge arrived at the same conclusion after hearing some economic testimony is not authority for the offset in this case, since it has been reversed

on other grounds. Gowdy v. United States, 412 F.2d 525 (6th Cir.1969) Nor do we encourage the trial courts of our circuit to explore such speculative influences on future damages as inflation and deflation.

Of course, the nation's economic history since the 1930's would appear to make the use of present wages as the standard for loss of future earnings somewhat unfair to plaintiffs. But as to the future, the inflation versus deflation debate rages inconclusively at the highest policy levels of our government, in national electoral campaigns, in learned economic journals and is exemplified in the daily gyrations of the stock markets. The debate seems unlikely to be resolved satisfactorily in one personal injury trial. And if testimonal resolution of this factor bearing on the future is attempted, the door is opened to similarly speculative and debatable offsets tending in other directions. *See* McWeeney v. New York, N. H. & H. R. R., 282 F.2d 34 (2d Cir.1960).

Harper & James accurately describes the past history of this debate and the present prevailing view:

"Future trends in the value of money are necessarily unknown and so always render such damages speculative in a way we cannot escape. If the estimates represent a straight-line projection of present living costs, they will be frustrated by fluctuations either way. If prophecy of change is heeded, frustration will follow if no change, or the opposite change, occurs. When courts have consciously grappled with the problem they have either found all prophecy too speculative and so, perforce, have taken the equally speculative course of betting on a continuance of the status quo; or they have made intuitive and not always very wise judgments that present conditions represent a departure from some imaginary norm to which they think we shall rapidly return. It is not at all clear that courts would be willing to hear experts on the matter, or that they would get much real help if they did. For the most part the problem —which is inevitably present in every case of future loss—is not analyzed and the present value of money is assumed to be the proper basis." II F. Harper & F. James, The Law of Torts § 25.11 (1956). (Footnotes omitted.)

Sleeman's injuries were severe and there was evidence that they would have permanent effect. The award (save for the present worth issue) is justified by the evidence and certainly does not shock our conscience.

The judgment of the District Court on issues of liability and damage is affirmed, except as noted. The judgment is vacated and remanded for recomputation of damages for future earnings based on the present worth formula of Chesapeake & Ohio Ry. v. Kelly, 241 U. S. 485, 36 S.Ct. 630, 60 L.Ed. 1117 (1916).

JOHN W. PECK, Circuit Judge (dissenting).

Bearing in mind that after Sleeman had walked halfway across the rainswept parking lot he looked to his left, saw the mail truck which ultimately struck him, and then proceeded into its path without again looking, I am of the view that he was guilty of contributory negligence as a matter of law (See Chesapeake & Ohio Railway Company v. Burton, 217 F.2d 471 (4th Cir.1954)) under the common-law principles as established and applied in federal courts, which are controlling in this FELA action. Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L. Ed. 1282 (1949); and Bailey v. Central Vermont Ry., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444 (1943).