MR. JUSTICE CASTLES
(dissenting) :
I dissent. The majority opinion states that the jury returned a verdict in the amount of $175,000. This is not legally accurate. Rather, the jury answered a special verdict question in that amount. And, as the trial court carefully pointed out in its closing remarks, the jury was to answer only the specific questions posed in the special verdict. The court, not the jury, was to make the determination of final damages and enter judgment accordingly. As provided in the Montana Rules of Civil Procedure, if a matter is submitted to the jury in the form of a special verdict an issue not specifically included in the special verdict may be decided by the court, and each party is deemed .to have waived its right to trial by jury on that specific issue.
The vice of the majority opinion is that it approves specula *190 tive, highly speculative, inflation trends for thirty years as to future wage increases. Speculation on the future of railroads, much less the future of jobs and wage increases, is a never-never land. Except for one Federal District Court case, Scruggs v. Chesapeake and Ohio Railway Company, D.C., 320 F.Supp. 1248, I have been unable to find any Federal Employers’ Liability Act case to support the majority opinion. I believe the correct law to be that stated by the 6th Circuit in 1969 in Sleeman v. Chesapeake & Ohio Railway Company, 414 F.2d 305, 308, where that court said:
“Nor do we encourage the trial courts of our circuit to explore such speculative influences on future damages as inflation and deflation.
“Of course, the nation’s economic history since the 1930’s would appear to make the use of present wages as the standard for loss of future earnings somewhat unfair to plaintiffs. But as to the future, the inflation versus deflation debate rages inconclusively at the highest policy levels of our government, in national electoral campaigns, in learned economic journals and is exemplified in the daily gyrations of the stock markets. The debate seems unlikely to be resolved satisfactorily in one personal injury trial. And if testimonial resolution of this factor bearing on the future is attempted, the door is opened to similarly speculative and debatable offsets tending in other directions. See McWeeney v. New York, N.H. & H.R.R., 282 F.2d 34 (2d Cir. 1960).”
In Sleeman the court found the following quotation from 2 Harper & James, The Law of Torts, § 25.11, to be applicable:
“ ‘Future trends in the value of money are necessarily unknown and so always render such damages speculative in a way we cannot escape. If the estimates represent straight-line projection of present living costs, they will be frustrated by fluctuations either way. If prophecy of change is heeded, frustration will follow if no change, or the opposite change, occurs. When courts have conspicuously grappled with the problem they have *191 'either found all prophecy too speculative and so, perforce, have taken the equally speculative course of betting on a continuance of the status quo; or they have made intuitive and not always very wise judgments that present conditions represent a departure from some imaginary norm to which they think we shall .rapidly return. It is not at all clear that courts would be willing to hear experts on the matter, or that they would get much real help if they did. For the most part the problem — which is inevitably present in every case of future loss — is not analyzed and the present value of money is assumed to be the proper basis.’ ”
Sleeman was confirmed by the 6th Circuit in 1970 in Petition of United States Steel Corporation, 6 Cir., 436 F.2d 1256, 1280:
“It is equally well settled in this Circuit that the prospect of a future decline in the purchasing power of the dollar may not Re used to offset the reduction to present value.”
I would affirm the judgment.