Henry L. **BEANLAND**, Appellee,

v.

**CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY**, Appellant.

No. 72-1446.

United States Court of Appeals, Eighth Circuit.

Argued April 9, 1973.

Decided May 17, 1973.

Bright, Circuit Judge, concurred and filed opinion.

David R. Odegard, Kansas City, Mo., for appellant.

Jo B. Gardner, Monett, Mo., for appellee.

Before GIBSON, BRIGHT, and ROSS, Circuit Judges.

ROSS, Circuit Judge.

Chicago, Rock Island and Pacific Railroad Company (Rock Island) brought this appeal from a judgment obtained by Henry L. Beanland (Beanland) in an F. E.L.A. action. The jury returned a verdict in the amount of $275,000.00, and the district court denied a motion for a new trial, 345 F.Supp. 220. We reverse with directions to hold a new trial.

Beanland, an engineer for Rock Island, was injured on March 25, 1970, in

an accident involving his train No. 74 (74) and extra train 1339 (1339), on a siding at Union, Missouri. Both trains were eastbound with 1339 preceding 74. At Union, 1339 took a siding to permit 74 to pass, but after taking the siding, failed to realign the siding switch to permit 74 to proceed on the main track. The crew of 1339 had placed warning torpedoes on the tracks west of the siding and had advised 74 by radio that 1339 was on the siding. When 74 approached the siding at 35 to 40 m. p. h. it hit the torpedoes and started to slow down. Beanland testified that as 74 continued eastward, he saw 1339 on the siding but did not notice that the siding switch was still open. He testified that he was given a "highball" signal by one of the crew members of 1339 and then increased his speed. As 74 approached within 75 feet of the switch, Beanland noticed the switch was open.[1] He threw the train into emergency braking, but being unable to stop in time, he jumped out of the side of it. 74 then rammed into the rear end of 1339 on the siding. In the collision the brakeman on 74 was killed and Beanland was injured in jumping. Beanland was later discharged by Rock Island.

Beanland commenced an action in the trial court alleging three separate causes of action: The first was under F.E.L.A. for injuries due to the negligence of Rock Island; the second was for wrongful discharge, an alleged breach of his employment contract; and the third was for conspiracy of Rock Island and its officers in wrongfully discharging Beanland. The trial court ordered that the first count be tried separately,[2] and this appeal is from the trial of that first count.

1. Beanland testified that at this point he noticed the "switching banner" was visible. "Switching banners" are devices, also referred to as "targets" or "switch targets" which are in the shape of round discs and located about five feet above the rail. When the full circular disc appears to the oncoming engineer it warns him that the switch is open.

2. Just before trial Judge Oliver eliminated from the trial the counts relating to the discharge and the punitive damages claimed in connection therewith. He stated he "was going to order a separate trial basically of that portion of Count I which presents an ordinary garden variety F.E.L.A. case." The case proceeded to trial then, on that basis.

On this appeal, Rock Island alleges several errors in trial, including the following:

1. The court erred in allowing evidence and in giving an instruction that the plaintiff's distress at the brakeman's death and the plaintiff's discharge were elements of plaintiff's damages.

2. The court erred in failing to include a "present worth" instruction in his charge to the jury and in refusing both of defendant's proffered instructions, thereby resulting in an excessive verdict.

3. The court erred in its refusal to allow various witnesses of defendant to testify as to the meaning of certain railroad rules and the custom and practice of applying those rules.

## I. EVIDENCE AND INSTRUCTIONS ON DISCHARGE AND DEATH OF BRAKEMAN

In the trial of this case, even though the trial court had ordered a separate trial as to Beanland's second and third counts relating to unlawful discharge, Beanland's counsel was permitted, over repeated objections, to ask several medical witnesses hypothetical questions which made certain assumptions relating to his discharge and to the death of his friend, the brakeman. The witnesses were asked to assume the following:

"[T]he head brakeman, a close friend of plaintiff, was killed and the plaintiff was discharged by the railroad and has been physically unable to work since the injury, and has suffered from mental depression and worry about his condition, loss of job, because of his being discharged and his physical inability to work, and because of his friend's death in the collision."

In the instructions to the jury regarding the effect of these assumed facts on Beanland, the district court stated:

"You are therefore instructed that the plaintiff may not be awarded any damages in connection with his discharge and that the evidence concerning his depression or withdrawal symptoms regarding that discharge is to be considered only in regard to your determination of the plaintiff's present and future physical and mental condition but not as a separate element of damage.

"You are further instructed that the evidence concerning the plaintiff's reaction to the death of Gary Schlesner [brakeman] was admitted for substantially the same limited purpose. In other words, you are instructed that the plaintiff may not recover any damages for any depression or withdrawal symptoms which you may find have resulted from the death of the brakeman but you may, however, consider that evidence as one of the many facts and circumstances in evidence which will assist you in determining the plaintiff's present and future physical and mental condition but not as a separate element of damage."

Rock Island argues that the trial court erred in allowing plaintiff to hypothesize the death of the brakeman, his own discharge and his mental distress therefrom, to each of his medical witnesses, since neither of the factors were proper elements of damages for mental anguish under the circumstances of this case. Rock Island further contends that the instruction given by the trial court set forth above permitted the jury to consider the death and discharge in determining damages for plaintiff's future physical and mental condition. Beanland contends that the damages flowing from the discharge were proper considerations as it was an intentional act of Rock Island which clearly put the blame on Beanland for the death of the brakeman, and furthermore since the testimony of the medical witnesses related the mental injury and worry to the physical trauma, damages for such mental anguish were proper herein.

We must agree with Rock Island that the challenged hypothetical question clearly brought before the jury, on sev-

eral occasions, an improper consideration of the effect of the discharge and the death of the brakeman which could have influenced their decision as to the amount of the verdict. And it would also appear that the instruction given by the trial court did little, if anything, to cure the improper questioning. Although the instruction was ambiguous, it could have been interpreted by the jurors to permit them to consider the mental anguish, resulting to the plaintiff from the discharge of Beanland and the death of the brakeman, in assessing damages.

The evidence of Beanland's mental suffering related not only to the direct injuries received in the accident but also to the effect of the discharge and the death of the brakeman. For example, the testimony of Dr. Moseley included the following questions and answers:

"Q. And how about his worry, mental anguish, depressed feeling? A. Well, hopefully this is not a permanent problem, but it has certainly been a significant portion of his total medical care up to date. *When you have no job,* no income, and hurt as much as this man is hurt, you get a reactive depression that can be quite severe. In fact, it is a disabling problem.

Q. *Loss of his friend in the accident* also related to that? A. This is contributing to it." App. at 111. (Emphasis added.)

▋▋ Once the trial court removed the discharge issue from the trial of this case, evidence relating thereto should have been excluded, not only as it related to damages suffered by the plaintiff, but also as it related to the defense of contributory negligence. *See* Kelly v. New York, New Haven & Hartford R. R., 138 F.Supp. 82, 83–84 (D.Mass. 1956), in which District Judge (later Chief Judge of the First Circuit) Bailey Aldrich reached the same conclusion. *Cf.* Anderson v. Louisiana & Arkansas Ry., 457 F.2d 784, 785 (5th Cir. 1972).

Damages resulting from *intentional* acts, such as the discharge, have no place in a personal injury F.E.L.A. action which deals exclusively with *negligence.* 45 U.S.C. § 51. In fact, an action for wrongful discharge would appropriately be in contract and not cognizable at all under 45 U.S.C. § 51.

The related question of mental suffering of Beanland resulting from the death of the brakeman must be separately considered. The Supreme Court has stated that "reasonable foreseeability of harm is an essential ingredient of Federal Employers' Liability Act negligence." Gallick v. Baltimore & Ohio R. R., 372 U.S. 108, 117, 83 S.Ct. 659, 665, 9 L.Ed.2d 618 (1963).

Certain general indicia of the foreseeability of a plaintiff suffering mental anguish when a third person is the one against whom the particular negligence is directed are set forth in D'Ambra v. United States, 354 F.Supp. 810, 819 (D. R.I.1973), a federal tort claims act case wherein the Court stated:

" 'In determining, in such a case, whether defendant should reasonably foresee the injury to plaintiff, or, in other terminology, whether defendant owes plaintiff a duty of due care, the courts will take into account such factors as the following:

(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it.

(2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.

(3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.' " *See also* W. Prosser, Law of Torts § 55 at 354 (3d ed. 1964).

This question has been analyzed by Prosser in this way:

"It would be an entirely unreasonable burden on all human activity if the defendant who has endangered one man were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it, including every bystander shocked at an accident, and every distant relative of the person injured, as well as his friends. And obviously the danger of fictitious claims, and the necessity of some guarantee of genuineness, are even greater here than before. It is no doubt such considerations that have made the law extremely cautious." W. Prosser, Law of Torts § 55, 353–354 (3d ed. 1964).

■ Here Beanland claims that the accident was caused solely by the negligence of other railroad employees; he was not in a position to actually witness the death of the brakeman and there was no showing (at least in the evidence included in the appendix) that the brakeman was any more of a friend to Beanland than his other co-workers. Under these circumstances, the jury should not have been permitted to consider the effect that the death of the brakeman had on the mental suffering of the plaintiff.

■ We therefore hold that the trial court erred in permitting the plaintiff to hypothesize the death of the brakeman and his own discharge, and his mental distress resulting therefrom, in questioning his medical witnesses. We also hold that the instructions given by the trial court did not correct this mistake and that the failure to make that correction in the instructions was prejudicial error.

## II. PRESENT WORTH INSTRUCTION

The district court refused to give the instruction requested by Rock Island relative to reducing the award for future loss of earnings to its present worth.[3] Although the trial judge had initially offered to instruct on this point with what was referred to as the "rule of thumb" present worth instruction [4] Rock Island objected thereto and the trial judge failed to give any instruction on present value at all.

The Supreme Court of the United States has directly spoken on the necessity of reduction of future benefits to present worth in an F.E.L.A. case. In its decision in Chesapeake & O. Ry. v. Kelly, 241 U.S. 485, 489–490, 36 S.Ct. 630, 632, 60 L.Ed. 1117 (1916) that Court stated:

"So far as a verdict is based upon the deprivation of future benefits, it will afford more than compensation if it be made up by aggregating the benefits without taking account of the earning power of the money that is presently to be awarded. It is self-evident that a given sum of money in hand is worth more than the like sum of money payable in the future.

". . . [A]s a rule, and in all cases where it is reasonable to suppose that interest may safely be earned upon the amount that is awarded, the

---

3. Rock Island's initial offer of a present worth instruction, was from W. Mathes & E. Devitt, Federal Jury Practice & Instructions § 76.12 at 433 (1965). However, the instruction ultimately offered was a modified form of the revision of § 76.12, such revision appearing in E. Devitt & C. Blackmar, Federal Jury Practice & Instructions § 78.13 at 205–206 (1970), the modification limiting reduction only for future lost earnings.

4. The "rule of thumb" instruction was apparently conceived by the trial judge from the case of Sleeman v. Chesapeake & O.

Ry., 305 F.Supp. 33, 34 (W.D.Mich. 1969), rev'd, 424 F.2d 547 (6th Cir. 1970) (per curiam). It instructs as follows:

"To determine the present cash value or worth of future loss of earnings, if any, which you may award, you may use the following rule of thumb: discount or reduce the estimated future loss by a per cent equal to the number of years it is assumed that the loss will be sustained. In other words, in the illustration which I gave, I think I referred to a 21-year period of work expectancy. You discount the total by 21 per cent."

ascertained future benefits ought to be discounted in the making up of the award."

This rule was specifically recognized in the F.E.L.A. case of Sleeman v. Chesapeake & O. Ry., 414 F.2d 305, 307–308 (6th Cir. 1969) wherein the Court remanded the case "for recomputation of damages . . . based on the present worth formula" of *Kelly, supra. Id.* at 308. The applicability of reduction to present worth has likewise been acknowledged in other cases involving F.E.L.A. or related Acts. *See e. g.,* Blue v. Western Ry. of Ala., 469 F.2d 487, 496 (5th Cir. 1972), cert. denied, 410 U.S. 956, 93 S.Ct. 1422, 35 L.Ed.2d 688 (1973); Ballantine v. Central R. R. of New Jersey, 460 F.2d 540, 544 (3d Cir.), cert. denied, Ballantyne v. Central Railroad, 409 U.S. 879, 93 S.Ct. 133, 34 L. Ed.2d 133 (1972); Yodice v. Koninklijke Nederlandsche Stoomboot Maatschappij, 443 F.2d 76, 77 (2nd Cir. 1971), (wherein Judge Friendly states that the request for the award for future lost earnings to be discounted to present value was "in line with so many familiar and controlling. decisions that extended citation would be supererogatory." *Id.* at 77–78); Taylor v. Denver and Rio Grande Western R. R., 438 F.2d 351, 353 (10th Cir. 1971); Petition of United States Steel Corp., 436 F.2d 1256, 1279–1280 (6th Cir. 1970), cert. denied, Lamp v. United States Steel Corp., 402 U.S. 987, 91 S.Ct. 1649, 29 L. Ed.2d 153 (1971); Downie v. United States Lines Co., 359 F.2d 344, 347 (3d Cir.), cert. denied, 385 U.S. 897, 87 S.Ct. 201, 17 L.Ed.2d 130 (1966); Pennsylvania R. R. v. McKinley, 288 F.2d 262, 264 (6th Cir. 1961); Chicago & N. W. Ry. v. Candler, 283 F. 881, 884 (8th Cir. 1922).

■ The failure of the trial court to give the instruction proffered by Rock Island which is set forth in E. Devitt & C. Blackmar, Federal Jury Practice & Instructions § 78.13 at 205–206 (1970) was prejudicial error.

## III. INTERPRETATION AND CONSTRUCTION OF OPERATING RULES

Rock Island attempted, on two different occasions, to introduce into evidence the testimony of railroad employees relative to the meaning and interpretation of certain terms relevant to Rock Island's defense of contributory negligence, said terms being found in Rock Island's Uniform Code of Operating Rules, specifically the phrase "safe flagging distance" found in Rule 11(a). That Rule, in pertinent part provides as follows:

"The explosion of two torpedoes is a signal to immediately reduce speed and proceed for a safe flagging distance at Restricted Speed."

This excerpt from the Uniform Code was offered into evidence as "Plaintiff's Exhibit 16" along with other portions of said Operating Rules. The term "Restricted Speed" was defined in a portion of the exhibit, but the Rules did not define the phrase "safe flagging distance." For that reason Rock Island attempted to elicit testimony from Mr. Ham, a safety officer of Rock Island, and from Mr. Gray, an assistant to the general manager of Rock Island, as to the customary interpretation given this phrase by those familiar with the rules and practices of the railroad profession. The trial judge denied admission of such testimony on the ground that the wording of Rule 11(a) was clear and did not require extrinsic evidence as to its meaning. Rock Island argues that the exclusion of this testimony was prejudicial error.

■ At the outset it should be noted that whether one characterizes this as a question of interpretation and explanation of the phrase "safe flagging distance" as it relates to Rule 11(a) or one of custom or practice in applying said Rule, the purpose of the attempted offer was to explain to the jurors the meaning of this phrase in the ordinary usage and operations of the trains of Rock Island.

Beanland had previously testified on cross-examination that he was familiar with Rule 11 and that he has fulfilled the rules as to restricted speed for a "sufficient distance" and Rock Island's obvious purpose in attempting to adduce the excluded testimony was to rebut that of Beanland and to show that he had, in fact, *not* proceeded at a restricted speed for a safe flagging distance, and that his failure to do so contributed to the accident, all in an attempt to diminish damages.[5]

■■■ Generally, in situations where written instruments contain words which have a technical trade usage or meaning which the jurors are consequently unable to intelligently interpret, extrinsic evidence in the form of expert testimony is allowed to explain such written terms. 7 J. Wigmore, Evidence § 1955 at 85–86 (1940). *See e. g.*, Knierim v. Erie Lackawanna R. R., 424 F.2d 745, 748 (2nd Cir. 1970); Carter v. Atlanta & St. Andrews Bay Ry., 170 F.2d 719, 721 (5th Cir. 1948), rev'd on other grounds, 338 U.S. 430, 70 S.Ct. 226, 94 L.Ed. 236 (1949); Wiggins v. Powell, 119 F.2d 751, 753–754 (5th Cir.), cert. denied, 314 U.S. 649, 62 S.Ct. 94, 86 L. Ed. 520 (1941); Finnegan v. Missouri Pac. Ry., 261 Mo. 481, 169 S.W. 969, 974 (1914). Also, competent expert testimony is generally admissible in cases involving the operations of a railroad which necessarily involve facts peculiar to such railroading. Such cases represent specific applications of the general rule enunciated in the case of Associated Dry Goods Corp. v. Drake, 394 F.2d 637, 644 (8th Cir. 1968), to-wit:

"It is the general rule that expert testimony is appropriate when the subject of inquiry is one which jurors of normal experience and qualifications as laymen would not be able to decide on a solid basis without the technical assistance of one having unusual knowledge of the subject by reason of skill, experience, or education in the particular field." *See also* Schillie v. Atchison, T. & S. F. Ry., 222 F.2d 810, 815 (8th Cir. 1955).

*See e. g.*, Detroit, T. & I. Ry. v. Banning, 173 F.2d 752, 756 (6th Cir.), cert. denied, 338 U.S. 815, 70 S.Ct. 54, 94 L. Ed. 493 (1949); Atchison, T. & S. F. Ry. v. Simmons, 153 F.2d 206, 208–209 (10th Cir. 1946); Cruce v. Gulf, Mobile & Ohio R.R., 361 Mo. 1138, 238 S.W.2d 674, 678 (1951). In this case the only testimony of what was meant by "safe flagging distance" insofar as it related to Beanland's action subsequent to 74 hitting the torpedoes in reducing his speed was that of Beanland himself. Rock Island should have been permitted to answer this testimony with its own expert opinion as to what constitutes a safe flagging distance.

In view of the decision we have reached relating to the first three points of Rock Island's appeal, we do not deem it necessary to reach the other assignments of error.

Reversed and remanded with directions to hold a new trial.

BRIGHT, Circuit Judge (concurring).

I concur in Judge Ross' opinion in this case, including requirement of an instruction on the present worth of future loss of earnings. I believe, however, that fairness to the plaintiff requires consideration of likely increases in future earnings attributable to offset-

---

5. The trial judge's rejection of the testimony appears to have been partially attributed to his concern that said evidence was related to the assumption of risk which has been abrogated in F.E.L.A. cases (App. at 175). Although it is true that assumption of risk no longer applies in F.E.L.A. cases, the defense of contributory negligence remains viable to the extent that it diminishes recovery. 45 U.S. C. § 53. *See* Dennis v. Denver & Rio Grande R. R., 375 U.S. 208, 210, 84 S.Ct. 291, 11 L.Ed.2d 256 (1963); New York Central R. R. v. Marcone, 281 U.S. 345, 350, 50 S.Ct. 294, 74 L.Ed. 892 (1930). This partial defense of contributory negligence cannot be denied the railroad merely because the evidence relating thereto may also be pertinent to assumption of risk. *See e. g.*, Murray v. New York, New Haven & Hartford R. R., 255 F.2d 42, 44 (2nd Cir. 1958).

ting inflationary trends in the economy.[1] In light of changes in the economic picture for the past 40 years, the present-worth instruction should be supplemented by appropriate comment of the court permitting the jury to take into account such increases in future earnings as may be likely to occur to offset decreases in the value of the dollar.

---

1. While courts are divided on the question, consideration of inflationary trends in computing future loss of earnings has been approved in the case of a plaintiff who lost a foot in a train accident. Pierce v. New York Central R. R. Co., 304 F. Supp. 44 (W.D.Mich.1969). *See* Willmore v. Hertz Corp., 437 F.2d 357, 359–360 (6th Cir. 1971); *cf.* Southern Pac. Co. v. Zehnle, 163 F.2d 453, 454–455 (9th Cir. 1947) (wrongful death action); Golden v. Sommers, 56 F.R.D. 3, 6 (M.D. Pa.1972) (no prejudice in allowing plaintiff's reference to inflation); Brooks v. United States, 273 F.Supp. 619, 627–628 (D.S.C.1967) (wrongful death action); *but see* Johnson v. Penrod Drilling Co., 469 F.2d 897, 904–906 (5th Cir. 1972); Petition of United States Steel Corp., 436 F.2d 1256, 1279 (6th Cir. 1970), cert. denied, 402 U.S. 987, 91 S.Ct. 1649, 29 L. Ed.2d 153 (1971); Sleeman v. Chesapeake & Ohio Ry. Co., 414 F.2d 305, 308 (6th Cir. 1969); *cf.* Williams v. United States, 435 F.2d 804, 807 (1st Cir. 1970) (wrongful death action).